**Hong Ki LEE and Michael Chavis, Plaintiffs–Appellants,**

v.

**The GOVERNOR OF the STATE OF NEW YORK, Defendant–Appellee.**

**Nos. 1392, 1773.**
**Dockets 95–2779, 95–2789.**

United States Court of Appeals, Second Circuit.

Submitted May 1, 1996.

Decided June 25, 1996.

Michael Chavis, pro se, for Plaintiffs–Appellants.

Dennis C. Vacco, Albany, NY, Attorney General of the State of New York (Victoria A. Graffeo, Solicitor General, Nancy A. Spiegel, Assistant Attorney General, Andrew D. Bing, Assistant Attorney General, of counsel), for Defendant–Appellee.

Before: NEWMAN, Chief Judge,
FEINBERG and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiffs Hong Ki Lee and Michael Chavis, New York State prisoners and pro se litigants, appeal from a judgment of the United States District Court for the Northern District of New York, Rosemary S. Pooler, J., dismissing their complaint against the Governor of the State of New York brought pursuant to 42 U.S.C. § 1983. The complaint alleged that an amendment to the New York Correction Law as well as certain Executive Orders, which restrict prisoner eligibility for temporary release programs, violate the Due Process, Equal Protection and Ex Post Facto Clauses of the United States Constitution. We affirm the judgment of the district court.

## I. Background

Sections 851–861 of the New York Correction Law govern temporary release programs at New York State correctional facilities. Temporary release programs include work release programs, furlough programs, community services programs, industrial training or educational leaves and leaves of absence.

N.Y. Correct. Law § 851(9). Prisoners in these programs still reside in correctional facilities, but with one exception are allowed to leave the premises for only up to 14 hours a day. N.Y. Correct. Law § 851(3)-(9).[1] Because of the nature of plaintiffs' offenses, prior to the amendment discussed below they were not eligible for any temporary release program without the written approval of the Commissioner of Correctional Services. N.Y. Correct. Law former § 851(2) (1987). In 1994, the New York Legislature amended § 851(2) so that thereafter the Commissioner would not have discretion to allow prisoners convicted of plaintiffs' offenses to participate in work release programs. 1994 N.Y. Laws, ch. 60, § 42(2) (the 1994 Act). The 1994 Act is inapplicable to prisoners participating in work release at the time of enactment, but otherwise applies to all inmates desiring to enter such programs on or after April 1, 1994. *Id.* at § 46(c). This change expires on September 1, 1997. 1995 N.Y. Laws, ch. 3, § 51. As a result of the 1994 Act, plaintiffs became completely ineligible for such programs.

In January 1995, defendant Governor George E. Pataki issued Executive Order No. 5 directing the Commissioner to adopt regulations preventing a broader class of prisoners (still including plaintiffs) from participating in any temporary release program. Appropriate regulations were adopted in June 1995. N.Y. Comp.Codes R. & Regs. tit. 7, § 1900.4(c)(1)(ii).[2]

Plaintiffs filed their complaint against the Governor in April 1995. They alleged that they were "eligible to apply and participate in the Work Release Program at the time of their alleged offenses" and that because of the change in the law, they became "ineligible for participation."[3] Neither al-

---

**1.** The only exception is the furlough program which allows prisoners to leave the premises for a period of up to seven days for certain designated purposes.

**2.** There has been a complicated series of executive orders and regulations on temporary release programs. For purposes of this opinion, it is not necessary to relate the complete chronology. For the full story, see *Dorst v. Pataki*, 633 N.Y.S.2d 730, 733–37 (N.Y.Sup.Ct.1995). For our purposes, it suffices to note that currently a

valid executive order (the Executive Order) prevents plaintiffs from participating in any temporary release program.

**3.** In their complaints, plaintiffs do not state the dates of their convictions or the crimes for which they were convicted. However, on an appeal from a grant of a motion to dismiss, the allegations of the complaint must be taken as true. *Kopec v. Coughlin*, 922 F.2d 152, 153 (2d Cir. 1991).

leged that he had ever participated in or applied for any temporary release program. Plaintiffs sought an injunction prohibiting the Governor from barring their "participation in the Work Release program" and declarations that the 1994 Act and the subsequent Executive Order were ex post facto and unconstitutionally deprived them of due process and the equal protection of the laws.

In July 1995, defendant Governor moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). The motion was referred to Magistrate Judge Ralph W. Smith, Jr., who issued a report recommending that the motion be granted and the complaint dismissed. Plaintiffs filed objections to the magistrate judge's report. In November 1995, the district court approved the report and granted the motion to dismiss. The district court held that because plaintiffs had not previously participated in the work release program, they had "no federally protected right to participate" in the program and "any new rules regarding the program do not represent increased punishment as to them, and the rules do not violate the ex post facto clause."

This appeal followed.

## II. Discussion

### A. Due Process Claim

■ The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause itself does not protect against every change in a condition of confinement that has a substantial adverse impact on a prisoner. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). As the Supreme Court has stated, "the [convicted] criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Id.* The circumstances in which the Court has found the Due Process Clause to apply of its own force involve deprivations much more severe than the one at issue here.

See *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 1036–37, 108 L.Ed.2d 178 (1990) (involuntary administration of antipsychotic drugs); *Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) (involuntary commitment to mental hospital); *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972) (revocation of parole); see also *Harper v. Young,* 64 F.3d 563, 565 (10th Cir.1995) (pre-parole program that allows prisoners to work and live outside of prison facilities is sufficiently similar to parole to merit protection by Due Process Clause), cert. granted, — U.S. —, 116 S.Ct. 1846, 134 L.Ed.2d 948 (1996); cf. *Meachum,* 427 U.S. at 224–25, 96 S.Ct. at 2538–39 (Due Process Clause not implicated where prisoner transferred to institution with more severe rules).

■ It is true that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner,* — U.S. —, —, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). But in *Sandin,* the Court held that in the prison context such a liberty interest "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Since plaintiffs have never participated in any temporary release program, we do not see how new rules rendering them ineligible for such programs impose the "atypical and significant hardship" required by *Sandin.* In that case, the Court found that disciplinary confinement for 30 days "did not work a major disruption in [the plaintiff's] environment." *Id.* at —, 115 S.Ct. at 2301. Here, not only will plaintiffs not be subject to a "major disruption" in their environment, they will not be subject to any change in their environment. Plaintiffs will simply continue in the regular prison program until the end of their sentences, as do many other inmates.

■ As we have already noted, even prior to the 1994 Act and the subsequent Executive Order, plaintiffs were not guaranteed participation in any temporary release program. See N.Y. Correct. Law former § 851(2) (inmates sentenced for crimes in-

volving serious physical injury, sex offenses or other offenses involving the use or threatened use of a deadly weapon are ineligible unless they receive written approval of Commissioner); id. at § 855 (participation is a privilege, not a right). Therefore, under the law even prior to *Sandin*, plaintiffs had no protected liberty interest in participating in these programs. *Greenwaldt v. Coughlin*, 93 Civ. 6551, 1995 WL 232736, at *6 (S.D.N.Y. Apr. 19, 1995). Since the *Sandin* approach was adopted to get the federal courts out of "the day-to-day management of prisons," — U.S. at ——, 115 S.Ct. at 2299, plaintiffs have no greater liberty interest in participation under the more restrictive standard of that case.

## B. Ex Post Facto Claim

As plaintiffs point out, even if they do not have a protected liberty interest they may still challenge the retroactive application of the new eligibility rules as a violation of the Ex Post Facto Clause, U.S. Const. art. I, § 10. *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981); *Dominique v. Weld*, 73 F.3d 1156, 1162 n. 9 (1st Cir.1996). That clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719–20, 111 L.Ed.2d 30 (1990). The 1994 Act and the Executive Order do not alter the definition of plaintiffs' crimes. Instead, plaintiffs argue that they are subject to new punitive measures that work to their detriment.

Although there is no clear test for whether a measure constitutes an increase in punishment, the recent Supreme Court decision in *California Dep't of Corrections v. Morales*, — U.S. ——, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), offers some guidance. *Morales* involved the constitutionality of a California statutory amendment that allowed parole hearings to be held every three years. Under prior law, a prisoner was entitled to a hearing every year. The Court held that the Ex Post Facto Clause did not prevent application of the amendment to a prisoner who committed his crime before the amendment. The Court stated that in contrast to laws that

had "the purpose and effect of enhancing the range of available prison terms," the amendment merely " 'alter[ed] the method to be followed' in fixing a parole release date under identical substantive standards." *Id.* at ——, 115 S.Ct. at 1602 (quoting *Miller v. Florida*, 482 U.S. 423, 433, 107 S.Ct. 2446, 2452–53, 96 L.Ed.2d 351 (1987)). The Court contrasted a mere change in the "legal regime," *id.* at —— n. 6, 115 S.Ct. at 1603 n. 6, with an increase in punishment.

The 1994 Act and the Executive Order do not constitute an increase in punishment. Their evident purpose is not to add punishment, but rather to serve the regulatory purpose of limiting early community contact for those in the designated felony categories. See Exec. Order No. 5, N.Y. Comp.Codes R. & Regs. tit. 9, § 5.5 ("the release of a person convicted of a violent felony offense who has not served his or her full sentence is a threat to public safety and welfare; . . . this Administration has pledged to protect the personal freedoms of innocent law-abiding citizens and eliminate temporary release for dangerous felons"); *McCormack v. Posillico*, 213 A.D.2d 913, 914, 624 N.Y.S.2d 304 (3d Dep't 1995).

The Supreme Court has made clear that "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the Constitutional prohibition' *must* be a matter of 'degree.' " *Morales*, — U.S. at ——, 115 S.Ct. at 1603 (quoting *Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)). Ineligibility for temporary release programs is more substantial than the restriction of law library hours, given as an example in *Morales* of an "innocuous" change, *id.*, but still falls on the lawful side of the ex post facto line.

Moreover, the Court in *Morales* stressed that deferral of the parole hearings "create[d] only the most speculative and attenuated risk" of lengthening the prisoner's sentence. *Id.* at ——, 115 S.Ct. at 1605. In this case, there is no allegation that plaintiffs' eligibility for or participation in a temporary release program would have any effect on the length of their sentences. Plaintiffs might make such an allegation, based upon N.Y. Exec. Law § 259–i(2)(c) ("performance, if any, as a participant in a temporary release

program" must be considered in parole decision). However, that statute requires consideration only of performance, and does not require consideration of whether or not a prisoner participated. In any event, this is only one of the many statutory factors that must be considered in the parole decision. See N.Y. Exec. Law § 259–i. Since no single factor is dispositive, the 1994 Act and the Executive Order provide a much more speculative risk of lengthening plaintiffs' sentences than was at issue in *Morales*.

We hold that the change at issue here—rendering certain prisoners ineligible for temporary release whereas previously they would have been eligible only with the (discretionary) permission of the Commissioner—is simply a change in the legal regime and is not an increase in punishment. *Vargas v. Pataki*, 899 F.Supp. 96, 99 (S.D.N.Y. 1995); *McCormack*, 213 A.D.2d at 914, 624 N.Y.S.2d 304; see *Dominique*, 73 F.3d at 1163 (no ex post facto violation where prisoner removed from temporary release program due to new eligibility requirements); but cf. *In re Medley*, 134 U.S. 160, 167, 10 S.Ct. 384, 386, 33 L.Ed. 835 (1890) (ex post facto violation where new statute required solitary confinement for prisoner prior to execution; solitary confinement is not "a mere unimportant regulation as to the safe-keeping of the prisoner").

C. Equal Protection Claim

■ Finally, plaintiffs allege that they have been denied the equal protection of the laws because those prisoners already participating in temporary release programs are not subject to the new eligibility requirements. Because prisoners either in the aggregate or specified by offense are not a suspect class, the 1994 Act and the Executive Order will be upheld if they are rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985); *Vargas*, 899 F.Supp. at 99. The changes at issue here bear a rational relationship to the legitimate state interest of ensuring public safety. We cannot say that the legislature's decision to affect only

those not yet participating in temporary release is irrational.

Judgment affirmed.