**Jack McLAURIN, Plaintiff–Appellant,**

v.

**Russ COLE, Defendant–Appellee.**

No. 95–2116.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1997.

Decided June 18, 1997.

**ARGUED:** Kevin M. Zielke, Dykema Gosset, Detroit, Michigan, for Appellant. Donald L. Allen, Office of the Attorney General, Lansing, Michigan, for Appellee. **ON BRIEF:** Bryan D. Marcus, Dykema Gosset, Detroit, Michigan, for Appellant. Donald L. Allen, Office of the Attorney General, Lansing, Michigan, for Appellee.

Before: CONTIE, RYAN, and BOGGS, Circuit Judges.

CONTIE, J., delivered the opinion of the court, in which BOGGS, J., joined. RYAN, J. (pp. 411–13), delivered a separate concurring opinion.

## OPINION

CONTIE, Circuit Judge.

Plaintiff-appellant Jack McLaurin ("McLaurin"), a Michigan inmate, filed this 42 U.S.C. § 1983 action against four corrections officers. On May 10, 1993, the district court dismissed three of the four defendants. On August 31, 1995, the district court granted judgment as a matter of law to the remaining defendant, Russ Cole. McLaurin appeals the judgment in favor of Cole. We affirm.

### I.

McLaurin is serving a life term in the custody of the Michigan Department of Corrections ("MDOC") at the State Prison of Southern Michigan ("SPSM") in Jackson, Michigan. On August 9, 1991, SPSM officers ordered an emergency count of the inmates just as McLaurin was preparing to take a shower. Upset because of his inability to take a shower, McLaurin struck the fire extinguishing sprinkler in his cell with a shoe, causing his cell to flood. McLaurin was immediately moved to a "quiet cell" for two hours. Following his release from the "quiet cell," McLaurin returned to his cell and allegedly discovered that his legal materials were covered with shampoo and butter. McLaurin later climbed on top of a basketball support in the recreation yard and refused to come down. He was eventually subdued and moved to a cell in SPSM's administrative segregation unit. McLaurin subsequently filed a grievance against Cole for his role in the sprinkler incident.

While housed in the administrative segregation unit, McLaurin demanded his prayer rug and fez. When Cole refused McLaurin's request (because prisoners in administrative segregation are not permitted to possess such items pursuant to MDOC policy), McLaurin purportedly beat his chest and cell window with his hands, kicked the door to his cell, and repeatedly threatened to kill Cole.

Cole subsequently issued McLaurin a "misconduct ticket" for his threatening behavior. McLaurin, however, asserts that Cole issued the "misconduct ticket" solely in retaliation for the grievance that McLaurin filed against Cole days earlier.

McLaurin subsequently filed this 42 U.S.C. § 1983 action seeking damages for "psychological distress, anxiety, mental anguish [and] physical anguish." Complaint at 6. Specifically, McLaurin alleges that the "Defendants denied plaintiff access to the court, the right to practice his religion [and] medical treatment [as] assured by the First, Eighth and Fourteenth Amendments." Complaint at 5.

On May 10, 1993, the district court dismissed McLaurin's claims against William Mickelson, Ray Hay and Terry Bildner, but denied Russ Cole's motion for summary judgment with respect to McLaurin's claim of retaliation. McLaurin's retaliation claim against Cole proceeded to trial.

After McLaurin rested his case, the district court granted Cole's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 because Cole's conduct did not "shock the conscience" of the court:

> Plaintiff is a prisoner at a Michigan correctional facility. According to the joint final pre-trial order, Plaintiff's only remaining claim was that Defendant, a correctional officer who is assigned to the property room, issued Plaintiff a "groundless misconduct ticket in retaliation for Plaintiff's filing a grievance against him."
>
> . . . .
>
> Plaintiff himself was called as the only witness in his case in chief. Plaintiff testified that defendant Cole had wrongfully issued him a misconduct ticket which cited Plaintiff for threatening Defendant's life. Plaintiff further testified that after receiving the ticket he was denied a visit to a podiatrist's office.
>
> The court finds that Plaintiff's claim cannot be maintained under controlling law. Plaintiff offered no evidence whatsoever to establish that Defendant's issuance of the misconduct ticket was an "egregious abuse of governmental power." Accepting all of

Plaintiff's testimony as true and accurate, the court finds that Defendant's actions do not rise to such a level as to "shock the conscience" of this court. Accordingly, Defendant is entitled to judgment as a matter of law.

District Court's August 31, 1995 Order Granting Defendant's Motion for Judgment as a Matter of Law at 1–3 (citations and footnote omitted).

On October 2, 1995, McLaurin filed a timely notice of appeal challenging the district court's dismissal of his retaliation claim against Cole.

## II.

### Standard of Review

■ The applicable Federal Rule of Civil Procedure provides:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1). "We review a judgment as a matter of law *de novo*." *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 490 (6th Cir.1995) (citation omitted).

### McLaurin's Retaliation Claim

McLaurin asserts that the district court should not have employed a "shocking to the conscience" standard:

This Court must view the allegations in the complaint in a light most favorable to plaintiff. When so viewed, the allegations demonstrate that plaintiff's complaint implicated an explicit constitutional guarantee—namely, the First Amendment right to freedom of speech. Given this, the Trial Court's requirement that plaintiff make an additional showing that defendant's mis-

conduct was somehow "shocking to the conscience" was erroneous. Plaintiff's claim that defendant's retaliatory conduct violated his First Amendment rights should have gone to the jury.

Appellant's Brief at 3.

In response, Cole asserts that the district court properly dismissed McLaurin's retaliation claim:

There was no *prima facie* proof that Plaintiff–Appellant was engaged in conduct which is protected by the Constitution, and that such protected conduct was a substantial or motivating factor behind Defendant–Appellee's actions. Plaintiff–Appellant's failure to carry these twin burdens is fatal to his claim....

Moreover, Plaintiff–Appellant has also failed to demonstrate that issuance of the misconduct ticket was an egregious abuse of power which shocks the conscience.

Appellee's Brief at v (citations omitted).

■ Though McLaurin argues that the facts alleged need not be shocking to the conscience because his claim is grounded on first amendment principles,[1] this court has repeatedly demanded that retaliation claims arising from the exercise of First Amendment rights be shocking to the conscience. For example, in *Cale v. Johnson*, 861 F.2d 943 (6th Cir.1988), this court held:

[A]ppellees allegedly framed appellant in retaliation for exercising his first amendment right to register a complaint about the food.

[T]he question remains whether appellees' alleged conduct constitutes an "egregious abuse of governmental power" within the meaning of *Vinson[ v. Campbell County Fiscal Court, 820 F.2d 194 (6th Cir. 1987)]* . . . . Thus, the evidence supports a claim that Wahl intentionally and maliciously framed Cale and filed disciplinary charges against him in retaliation for Cale's exercise of his first amendment rights. This alleged conduct constitutes an

---

1. Specifically, McLaurin argues that his right to file grievances and threaten prison guards is

protected by the first amendment.

egregious abuse of authority within the meaning of *Vinson.*

*Id.* at 950. *See also Birdo v. Smith,* 94 F.3d 644 (6th Cir.1996) (unpublished) ("[T]he gravamen of Birdo's complaint is his assertion of retaliation.... If an analysis of the facts reveals that retaliation occurred, then Birdo's substantive due process rights may have been violated, as such retaliation could be construed as shocking to the conscience."); *Williams v. Jabe,* 52 F.3d 327 (6th Cir.1995) (unpublished) ("Government officials may not retaliate against persons who have participated in constitutionally protected conduct, nor interfere with a prisoner's fundamental right of access to the courts. Williams has not shown that the defendants' conduct constitutes an egregious abuse of governmental power or that such action otherwise shocks the conscience."), *cert. denied,* —— U.S. ——, 116 S.Ct. 730, 133 L.Ed.2d 681 (1996); *Riley v. Evans,* 41 F.3d 1507 (6th Cir.1994) (unpublished) ("The defendant is also entitled to judgment as a matter of law to the extent Riley claimed that the defendant filed the misconduct charge to retaliate against Riley for filing grievances against the defendant. Riley's allegation of retaliation does not demonstrate an egregious abuse of authority sufficient to defeat a motion for summary judgment."); *Taylor v. Brown,* 9 F.3d 109 (6th Cir.1993) (unpublished) ("The defendants are entitled to judgment on Taylor's claim that they filed false disciplinary charges against him in retaliation for Taylor having filed grievances regarding the mistreatment of prisoners.... Taylor's allegations of retaliation do not demonstrate an egregious abuse of authority sufficient to defeat a motion for summary judgment.").

■ Though McLaurin asserts that Cole filed the major misconduct ticket in retaliation for McLaurin's grievance regarding the destruction of his legal materials and, perhaps, the deprivation of his religious materials [2] and a missed podiatrist appointment, the record reveals that McLaurin threatened to kill Cole. In fact, McLaurin purportedly pounded his fists against his chest and kicked a door during his outburst. Though inmates retain those rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of corrections officials, *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Id.* at 823, 94 S.Ct. at 2804. In light of McLaurin's threatening behavior, it is not surprising that Cole issued the major misconduct ticket.

Because McLaurin failed to prove that his filing of the grievance was a substantial or motivating factor behind Cole's issuance of the misconduct ticket, and because Cole's actions were not shocking to the conscience, the district court properly dismissed McLaurin's retaliation claim against Cole.[3]

Accordingly, we **AFFIRM.**

RYAN, Circuit Judge, concurring.

The majority opinion arrives at what I believe to be the correct end point, but in my view, the analytical route taken to get there is mistaken. Simply put, *Cale v. Johnson,* 861 F.2d 943 (6th Cir.1988), is not the map to follow. I must therefore concur separately.

As the majority opinion recognizes, Jack McLaurin's lawsuit asserts that the defendant, Russ Cole, issued a misconduct ticket to McLaurin solely in retaliation for an administrative grievance that McLaurin had earlier filed against Cole. This type of claim is founded on the First Amendment, which provides a constitutional guarantee of access to the courts. *See Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 387 (6th Cir.1992); *cf. Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). This First Amendment right has been held to extend to prisoners who pursue legal claims against prison officials, *see Johnson v. Avery,* 393 U.S. 483, 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), including those prisoners who utilize the prison administrative process, *see Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988); *Wolfel v. Bates,* 707

---

**2.** Specifically, his prayer rug and fez.

**3.** Because the district court properly dismissed McLaurin's action against Cole, we need not decide Cole's right to qualified immunity.

F.2d 932, 933 (6th Cir.1983) *(per curiam )*. Thus, it is a violation of the First Amendment to discipline a prisoner because he has filed a complaint in accordance with prison procedures, *see Wolfel,* 707 F.2d at 933–34, and discipline that is otherwise proper is actionable under 42 U.S.C. § 1983 if it is done in retaliation for filing a grievance under established prison procedures, *see Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) *(per curiam )*. This is the type of substantive due process claim that the plaintiff's complaint attempts to make out.

As the Supreme Court explained in *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986), the Due Process Clause of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." This is "the concept embodied in the phrase 'substantive due process.'" *Lewellen v. Metropolitan Gov't of Nashville,* 34 F.3d 345, 346 (6th Cir.1994). And the majority is correct that the standard applied by this court to some substantive due process claims is the "shocks the conscience" standard, a criterion of dubious semantic clarity under any circumstances. *See Cassady v. Tackett,* 938 F.2d 693, 698 (6th Cir. 1991); *Braley v. City of Pontiac,* 906 F.2d 220, 224–25 (6th Cir.1990). But as this court has also held, there are two distinct categories of substantive due process rights, and only one of them implicates the "shocks the conscience" standard:

> Substantive due process claims are of two types. The first type includes claims asserting denial of a right, privilege, or immunity secured by the constitution or by federal statute other than procedural claims under "the Fourteenth Amendment *simpliciter.*"
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of "shocks the conscience" of the court.

*Mertik v. Blalock,* 983 F.2d 1353, 1367 (6th Cir.1993). The *latter* type of claim does not "require[ ] a claim that some specific guarantee of the Constitution apart from the due process clause be violated.... This is a substantive due process right akin to the 'fundamental fairness' concept of procedural due process." *Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir.1985) *(en banc )*.

In contradistinction, when a plaintiff alleges that a constitutional right specifically enumerated in the Bill of Rights has been denied him, for example, his right to be free from unreasonable seizures under the Fourth Amendment, or, as here, his First Amendment right of access to the courts, he has then alleged a substantive due process violation of the sort first described in *Mertik.* This important analytical difference between the two varieties of substantive due process claims should amply illustrate why the "shocks the conscience" standard is not appropriately applied in the type of claim implicated here. The "shocks the conscience" standard developed as a safeguard against frivolous substantive due process claims of this ill-defined, non-enumerated, generalized variety. Only this category of generalized substantive due process claims not rooted in any specific enumerated provision of the Bill of Rights need meet the "shocks the conscience" standard in order to survive dismissal.

And the logic of this is apparent. If a plaintiff has adequately alleged a willful violation of, for example, the First Amendment, it simply makes no sense for the court to require further that the particular unconstitutional action in question be one that is shocking to the conscience of the court. The constitutional violation has occurred, and there is no necessity—or justification—for erecting an additional shocks-the-conscience hurdle. Now, it may be that some violations of a citizen's specifically enumerated constitutional guarantees are so *de minimis* as to be frivolous or otherwise not actionable; but we have never held that such an injury must either "shock the conscience" or face dismissal.

The majority declares that *Cale v. Johnson* supports the application of the shocks-the-

conscience test, but this is incorrect. First, *Cale* does not hold that the shocks-the-conscience test is the appropriate standard for that case; it simply mentions that standard in passing, as a *dictum*. *See Cale,* 861 F.2d at 949. But second, and more importantly, *Cale* is not a "retaliation" case in the sense that this case is a retaliation case. The plaintiff's claims in *Cale* were founded on the second type of substantive due process, and the word "retaliation" was mentioned in the opinion only in the general sense, as a motive for a guard's behavior. *See id.* at 949–50; *see also id.* at 951 (Nelson, J., concurring). There was no suggestion that the guard's action in *Cale* was taken in retaliation for the plaintiff's attempt to gain access to the courts or utilize the administrative grievance process, or any other exercise of a First Amendment right. I know of no published authority from this court relying on *Cale* for the proposition that the shocks-the-conscience standard is appropriately applied in First Amendment retaliation claims; the majority's reliance on unpublished case law may be interesting as an academic matter, but those cases simply do not have the weight of authority. *See* 6th Cir. R. 24.

Despite my disagreement with the majority's approach to this case, I do agree that the plaintiff failed to present any evidence whatsoever that his filing of a grievance played any role in the defendant's decision to issue a misconduct ticket. The district court correctly, therefore, granted summary judgment to the defendants, and I concur in the majority's decision affirming the district court's judgment.