**James CARTER, Plaintiff,**

v.

**Tim McCALEB, individually; and County of Calhoun, a public body; and Marcia Leavel, individually; jointly and severally, Defendants.**

**No. 4:97 CV 139.**

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 12, 1998.

William F. Piper, Durant, Piper & Connelly, L.L.P., Kalamazoo, MI, for Plaintiff.

John L. Thurber, Frank J. Kelley, Attorney General, Lansing, MI, Richard H. Winslow, Cummings, McClorey, Davis & Acho, PC, Battle Creek, MI, for Defendants.

### JUDGMENT

ENSLEN, Chief Judge.

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment (dkt.# 51, 52) are **GRANTED,** and that judgment is entered in favor of Defendants and against Plaintiff as to Plaintiff's federal law claims;

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED** without prejudice;

**IT IS FURTHER ORDERED** that Plaintiff's Cross Motions for Summary Judgment (dkt.# 57, 58) are **DENIED.**

### OPINION

This matter is before the Court on the parties' cross motions for summary judgment and/or dismissal. Plaintiff brings suit, pursuant to 42 U.S.C. § 1983, against the County of Calhoun, probation officer Tim McCaleb, and Sgt. Marcia Leavell of the County Sheriff's Department. He alleges: (1) violations "of liberty interest and the interest against cruel and unusual punishment" against all defendants; (2) First Amendment retaliation against Defendant McCaleb; (3)

denial of access to the courts by Defendant County; and (4) supplemental state law claims against Defendants Leavell and McCaleb.

On October 4, 1994, Plaintiff James Carter pled guilty to two counts of delivery of cocaine, less than 50 grams. On June 26, 1995, he was sentenced. The sentence included lifetime probation and a twelve month jail sentence, with credit for 61 days. A form titled "Judgment of Sentence" included a section titled "Release Authorized for the Following Purpose" and a box was checked indicating "to work or seek work." In the transcript of the judgment issued from the bench, the court stated that "[t]he plea agreement contemplated that you will be receiving a sentence on each of the two cases, possible sentence, two cases of lifetime probation with the one year county jail. Sentence will involve work release on one of the two. And I intend to follow that because the plea agreement, as I understand, has been carried out on your part." The court later stated that "the release only from the county jail on work release contemplates that you are working." The court asked if the Plaintiff was working at the time, to which he responded yes.[1] The Court went on:

> To make sure that you understand what I say, that you may be on work release, that's simply an okay that you may be put on that status. It's a sheriff's work release program. It belongs to the sheriff, not the court system. I have nothing to do with it.
>
> And you go over to the county jail and allow you to be on work release, they can disallow you from being on work release. They have rules and regulations and you are found to have marijuana on you for instance, they can revoke the—Sheriff can revoke the work release. He doesn't have to come to the Judge.
>
> So the—the Sheriff's program you have to understand that the Judge does not interfere with the work release program. The

only thing I have to do with it is to say it's okay with me.

> If the sheriff wants to put you on it as part of your sentence, keep in mind that you have to abide by all the rules and regulations of the Sheriff's Department with regard to work release.

It appears that the Defendants did not process Plaintiff's work release in a timely fashion, and did not check his employment reference until one week after sentencing, at which time no job was available with the putative employer. Plaintiff subsequently sought to be released to pursue work, but was not released. He allegedly wrote numerous complaints, or "kites," in this regard, which received no response. He then wrote to the attorney who represented him at sentencing, and allegedly to the sentencing judge, but still received no action on his request for work release.

On August 25, 1995, Defendant McCaleb wrote a letter to Plaintiff, accusing him of "misrepresenting" and "manipulations to get out of jail early." He stated that he would not support early release in any form, and that since one of Plaintiff's sentences did not permit work release, it was "practically irrelevant" that the other did. He concluded:

> To put it bluntly, you were given 12 months in jail, and I think it's important that you do them. If you cannot accept this reasonable retribution without the continuing whining machinations you've demonstrated thus far, you will merely confirm that you have to be more *closely* monitored and *inflexibly* responded to when you are released. I trust you see my point.
>
> (emphasis in original)

At some point in this process, the Plaintiff alleges he again sought the help of his former attorney, but was told that a retainer would be required. He also alleges that he asked jail officials for access to materials in order to perform legal research, but was told

---

**1.** In fact, contrary to his representation to the Court, the Plaintiff was not working at the time of sentencing. He may, however, have had a job offer, with an expected start on the day of sentencing. Two factual issues arise in this regard: (1) whether the Plaintiff actually had a job offer

at the time of sentencing and (2) whether the Sheriff's office considered a job offer to be equivalent to "gainful employment" under its regulations. Ultimately, however, the Court concludes that these issues are not material to its determination.

the jail did not have a law library. The Plaintiff served his entire sentence in the County Jail.

### Legal Standards

Under Rule 12(b)(6), a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.,* 135 F.3d 389, 405 (6th Cir.1998).

"Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *City Management Corp. v. U.S. Chemical Co.,* 43 F.3d 244, 250 (6th Cir.1994).

"A party seeking summary judgment bears the initial burdens of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Under this test, the moving party may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997) (quoting *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). "Once this initial burden is met, it becomes the burden of the non-moving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.,* 48 F.3d 201, 205 (6th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Mere conclusory assertions or speculation will not suffice to avoid summary judgment, however. *Moore v. Philip Morris Cos.,* 8 F.3d 335, 343 (6th Cir.1993). The non-moving party must go beyond the pleadings and provide sufficient facts to establish the dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed. R. Civ. Pro. 56(e)).

" '[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.' " *Id.* (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. This Court "cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir. 1982).

### Analysis

#### Procedural due process

■ While there are a number of subsidiary claims, this case revolves around the contention that Defendants "violated [Plaintiff's] liberty interest" in being placed on work release. While inartfully phrased by Plaintiff, this is a procedural due process claim, complaining that Plaintiff did not receive due process before being deprived of his putative liberty interest. As well, it may present a substantive due process claim. In order to succeed on either, a liberty interest must first be identified.

The due process playing field was dramatically altered by the Supreme Court in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Before *Sandin,* an inquiry into the source of a protected liberty interest was critical. Then, an enforceable liberty interest could be conferred upon pris-

oners through the enactment of "statutory or regulatory measures which place substantive limitations on prison officials' discretion." *Klos v. Haskell,* 48 F.3d 81, 86 (2d Cir.1995). In order to confer such an interest, a finding was necessary that the state law placed "substantive predicates" on the discretion of officials, and employed mandatory language requiring that the officials adhere to those predicates. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). After *Sandin,* the language used in a statute or regulation is irrelevant. The Court has created a new regime in which the nature of an interest, not its source, determines whether it is constitutionally protected. A court must now determine if a condition of imprisonment "imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. From the language of *Sandin,* it is apparent that comparisons must be drawn to determine typicality and significance. *Sandin* provides two guidelines for making the necessary comparison. First, the Court looked at whether there was a "dramatic departure from the basic conditions" of defendant's sentence. 515 U.S. at 485, 115 S.Ct. 2293. It then analyzed whether "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him [in segregation] for 30 days [amounted to] a major disruption in his environment." *Id.* at 486, 115 S.Ct. 2293.

In a recent, apposite case, the First Circuit has held, applying *Sandin,* that a work release program does not give rise to a property interest. *Dominique v. Weld,* 73 F.3d 1156 (1st Cir.1996). In *Dominique,* the plaintiff had been on work release for almost four years when his status was revoked. The court, in determining whether the plaintiff had been subjected to "atypical and significant hardship," noted that the duration of the plaintiff's sentence had not changed and that he was subjected to "conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion." *Id.* at 1160. In this regard, the court further noted that "confinement within four walls" is an "ordinary incident of prison life," and is not "atypical." *Id.* The court concluded that the Supreme Court, in *Sandin,* "plainly intended to eliminate the basis for federal due process claims stemming from internal transfers and status changes that do not result in … hardship beyond the norms of ordinary prison life." *Id.*

In *Lee v. Governor of New York,* 87 F.3d 55 (2nd Cir.1996), plaintiffs challenged a law which rendered them ineligible to participate in work release, a program in which they had not previously participated. While the Second Circuit's conclusion that plaintiff's confinement would not be disrupted was partially directed by their prior non-participation, the court also noted that "[p]laintiffs will simply continue in the regular prison program until the end of their sentences, as do many other inmates." *Id.* at 58. In other words, the court treated a lack of work release as an "ordinary incident of prison life."

Other courts have also considered whether an inmate has a liberty interest in participation in a release program such that some process is due before the inmate can be removed from the program. The courts have split on the resolution of this issue. Compare *Callender v. Sioux City Residential Treatment Facility,* 88 F.3d 666 (8th Cir. 1996) (inmate who had not yet participated in work release program, and whose sentence was not increased, did not suffer atypical hardship); *Asquith v. Volunteers of America,* 1 F.Supp.2d 405 (D.N.J.1998) (after reviewing the various cases addressing the issue, concluding that work release is a "species of incarceration" which does not give rise to a liberty interest); with *Greaves v. New York,* 951 F.Supp. 33, 35 (S.D.N.Y.1996) (in a case where prisoner lived at home five days a week, the practical effect of deprivation of temporary release program "caused a 'major disruption' and a 'significant hardship.' Thus, [prisoner] had a liberty interest in his continued participation"); *Roucchio v. Coughlin,* 923 F.Supp. 360, 374 (E.D.N.Y. 1996) ("[a]n objective evaluation of the circumstances attending [plaintiff's] participation in the work release program warrants the conclusion that the revocation of this conditional freedom, that enabled him to live

five days a week outside the prison walls, worked a 'major disruption' in his prison environment, and imposed an 'atypical and significant hardship [upon him] in relation to the ordinary incidents of prison life' "); *Quartararo v. Catterson*, 917 F.Supp. 919, 940 (E.D.N.Y.1996) ("the removal of a prisoner from a work release program in which he has been gainfully employed imposes an atypical, significant hardship.").

The above cases locating a liberty interest in work release have distinguishable facts. First, in both *Greaves* and *Roucchio*, the prisoners lived at home for most of the week. In *Quartararo*, the prisoner was "gainfully employed" rather than prospectively employed. In these contexts, it is easier to conclude that a "major disruption" would be worked by denial of work release.

The Supreme Court has offered some language which would appear to support the suggestion that work release is subject to the procedural protections of the Fourteenth Amendment. In *Young v. Harper*, 520 U.S. 143, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997), the Court held that a placement in a so-called "preparole" program in Oklahoma could not be revoked without the process available to parolees under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Court noted the following characteristics of preparole release in determining that it was dissimilar to incarceration: "[h]e kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment." *Young*, 117 S.Ct. 1148. To be sure, an Oklahoma preparolee and a Michigan prisoner on a work release program share the characteristic of gainful employment. The similarity ends there, however. When not at work, a work release participant remains a prisoner. He does not keep his own residence, and, since he is imprisoned during non-work hours, he is in no way "free of the incidents of imprisonment." Accordingly, his status is different in kind from that of the preparolees in *Young*.

The Sixth Circuit has not yet issued a published decision construing *Sandin* in the context of work release programs. It has, however, issued two unpublished decisions concluding that no liberty interest is implicated in a denial of work release. *Thompson v. Thompson*, No. 96–6352, 1998 WL 211775 (6th Cir. April 23, 1998) ("removal from the work release program was not an atypical and significant hardship"); *Little v. Campbell*, No. 96–5515, 1997 WL 242050 (6th Cir. May 8, 1997) ("[d]enial of placement in a work release center does not implicate a liberty interest protected by the Due Process Clause because it is not a significant and atypical hardship.")

Plaintiff appears to argue that even if he has no liberty interest in work release in itself, he somehow has a liberty interest in the sentencing judgment's language authorizing work release. *Sandin* instructs, however, that regardless of the source—a regulation, a statute, or a court order—a liberty interest is not implicated in a condition of sentence unless an "atypical hardship" must be endured in its absence. For instance, in *Bulger v. United States Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995), exclusion from a federal prison work assignment was governed by explicit procedural rules *that the government did not follow. Id.* at 49–50. The government's failure to follow its procedures was of no import, in the absence of an atypical, significant hardship. *Id.* at 50. That a condition is included in a court order no more creates an interest than does its inclusion in a regulation or statute. Moreover, there is no question that the Court's judgment did not require work release, but rather permitted it.

Mich. Comp. Laws § 801.251 provides that "a sentence or commitment of a person to a county jail for any reason may grant to the person the privilege of leaving the jail" to work or seek employment. The sentencing judge granted that privilege, but with a number of conditions. The form judgment issued by the court "authorized" work release. As the judge himself noted at the sentencing hearing, this authorization was "simply an okay," and the program is administered by the Sheriff, who decides if he "wants to put you on it as part of your sentence." There is nothing mandatory about this part of the sentencing judgment. If work release were somehow mandated as part of the Plaintiff's

sentence, he might be able to claim that its absence was "a dramatic departure from the basic conditions" of his sentence. *Sandin*, 515 U.S. at 485, 115 S.Ct. 2293. It was not mandated by the judgment, however. Instead, it was simply permitted. In the absence of a requirement in the sentence, work release was not a "basic condition" of Plaintiff's incarceration.[2]

In conclusion, the Plaintiff was not yet a participant in the County's work release program when it failed to process him. Nor was he actually working at the time. Accordingly, the failure did not work a "major disruption" in his incarceration or employment. As well, imprisonment, when a sentence calls for it, with work release authorized but not effected, is an "ordinary incident of prison life." Finally, work release was not a "basic condition" of Plaintiff's sentence. On these facts, and against the background of the cases reviewed above, the Court concludes that Plaintiff did not have a liberty interest in participation in the County's work release program.

■ In the absence of a liberty interest, no process is *constitutionally* due. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Constitution defers to essentially any state action until a liberty or property interest is implicated. Whether Defendants could or should have done things differently, the Constitution takes no position. There may be state law restrictions on state behavior such as that alleged here, e.g., a state mandamus or damages proceeding may lie, but there is no federal interest in the state's execution of its laws until a constitutionally protected liberty interest is established. *See, e.g., Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993) ("[a] state cannot be said to have a federal due process obligation to follow all of its procedures; such a system

would result in the constitutionalizing of every state rule, and would not be administrable."). There remains no genuine issue of material fact as to whether Plaintiff's procedural due process rights were violated. They were not.

**Substantive due process**

■ A substantive due process claim cannot exist in a vacuum. As is true for procedural due process claims, in order to state a claim of violation of substantive due process rights, a liberty or property interest must first be shown. *See, e.g., Cassady v. Tackett*, 938 F.2d 693, 697 n. 5 (6th Cir.1991); *Silver v. Franklin Township*, 966 F.2d 1031, 1035 (6th Cir.1992). "Certainly the constitutional right to 'substantive' due process is no greater than the right to procedural due process. Accordingly, the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument." *Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1 (7th Cir.1974) (opinion by Circuit Judge (now Justice) John Paul Stevens) (quoted in *Sullivan v. Brown*, 544 F.2d 279, 282 (6th Cir. 1976)). Since there is no liberty interest in work release, there can be no substantive due process violation in its denial.

**Denial of Access to the Courts**

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. 1491. *Bounds* has its limits, however. In *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court made clear that denial of an adequate law library or adequate assis-

---

**2.** Plaintiff's complaint that his sentence required that he be released to seek work is also incorrect. While the sentence form did check a box authorizing release "to work or seek work," the sentencing judge said at sentencing that work release "contemplates that you are working." Moreover, as noted at length above, the sentence

included no work release "requirement" of any kind. While Plaintiff has a strong argument that if his job offer was impeded by Defendants, fairness dictates he should have been permitted to seek work in lieu of the thwarted offer, the argument does not produce a constitutional question.

tance is not actionable unless the inmate can show that he suffered actual injury as a result of the inadequacy. *Id.* at 2180. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id.* The inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* The legal claim impaired must be one cognizable under the access to the courts law developed by the Supreme Court.

■ *Lewis* stated that "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 2182. Rather, "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* This last term, "conditions of confinement" is more restrictive than it appears. Under *Lewis,* constitutional access to the courts is limited to the access necessary for vindication of "basic constitutional rights." *Id.*

■ With this understanding of the limitations of a denial of access claim, it is apparent that the Plaintiff's cannot succeed. Had he brought a claim, it would have been intended not to challenge his conviction or sentence,[3] but its implementation by jail officials. As has already been explained, this implementation did not implicate constitutional rights. As is noted by Plaintiff, he would most likely have pursued a writ of mandamus, based on state law. Since any contemplated suit would neither attack his sentence, nor pursue vindication of a constitutional right, no access to the courts was constitutionally mandated.

### Cruel and Unusual Punishment

Plaintiff does not respond to Defendants' motion for summary judgment on Plaintiff's

Eighth Amendment claim. Accordingly, he appears to concede that he has not made out such a claim. If not, it could not succeed in any event. As the Sixth Circuit stated in *Parrish v. Johnson,* 800 F.2d 600, 609 (6th Cir.1986):

> In generalities, the Eighth Amendment proscribes disproportionate punishments, [ ] "unnecessary and wanton infliction of pain," [ ] and conduct repugnant to "evolving standards of decency[.]" In concrete terms, the Eighth Amendment protects prisoners from being severely beaten, [ ] intentionally denied medical care for serious medical needs, [ ] recklessly subjected to violent attacks or sexual assaults, [ ] and denied "the basic elements of hygiene."

(citations omitted). It should go without saying that Plaintiff's complaints do not reach this level of mistreatment, especially in the absence of a liberty interest in the program he was denied.

### First Amendment Retaliation

■ Plaintiff alleges that McCaleb's letter, threatening that Plaintiff's "continuing whining machinations ... will merely confirm that [Plaintiff will] have to be more *closely* monitored and *inflexibly* responded to when [he is] released," constitutes retaliation against Plaintiff in response to his exercise of his First Amendment rights. First Amendment retaliation claims are a species of substantive due process law, essentially concluding that a property interest inheres in the rights protected by the First Amendment. To make out a claim of retaliation, the conduct of an alleged retaliator must "shock the conscience." *See McLaurin v. Cole,* 115 F.3d 408, 410 (6th Cir.1997). This standard is also phrased as requiring a showing of "egregious abuse of governmental power." *Cale v. Johnson,* 861 F.2d 943, 949–50 (6th Cir.1988). McCaleb's letter, while inappropriate, neither shocks the conscience, nor appears to be an egregious abuse of power.

### State claims

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental

---

**3.** Any claim attacking his conviction based on failure to receive the benefit of his plea bargain would be frivolous. His plea bargain required the prosecutor to recommend a one year sentence with work release. The prosecutor did so.

jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction[.]" Indeed, " 'if the federal claims are dismissed before trial, ... the state claims [generally] should be dismissed as well.' " *Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218, (1966)). The Court, therefore, in its discretion, will dismiss Plaintiff's state claims without prejudice.

### Conclusion

On the record presented to the Court, the actions of the Defendants which led to this case do not appear blameless. However, these acts do not rise to the level of constitutional violations. Summary judgment as to Plaintiff's federal claims will therefore be entered in favor of Defendants. Plaintiff's state law claims will be dismissed without prejudice.