**Fred Louis LAMP, Appellant,**

v.

**Hal FARRIER, Appellee.**

**No. 84–2087.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1985.

Decided June 6, 1985.

John C. Wellman, Des Moines, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and WOODS,* District Judge.

HENRY WOODS, District Judge.

Fred Louis Lamp appeals the District Court's[1] denial of his petition seeking a writ of habeas corpus. Lamp argues that his state court conviction for first degree murder improperly relies upon statements made by him which were obtained in violation of his Fifth Amendment right to have counsel present during a custodial interrogation.

At approximately 12:35 A.M. on May 10, 1980, Melody Oliver was found in the middle of a road in Des Moines, Iowa. She told those who found her that she had been raped and stabbed by a man named Fred who was approximately 32-years-old and driving a blue van. She was taken to the hospital where she died at 3:20 A.M. Police at the scene thought that Lamp, a suspect in two unrelated criminal proceedings, met Oliver's description. Other officers in the area were informed of the assailant's description, and at 4:20 A.M. a Polk City policeman observed a blue van being driven in a manner which the Iowa Supreme Court held justified an investigatory stop.[2] When the policeman discovered that Lamp was the driver of the blue van, he notified the sheriff's office investigating the Oliver murder. After Lamp was advised of his *Miranda* rights, he agreed to remain at the scene until the sheriff's deputies arrived.

At about 4:39 A.M. Deputy Sheriffs Collins, Turck, and Anderson arrived, adminis-

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Donald F. O'Brien, United States District Judge for the Southern District of Iowa.

2. Lamp raises no issue concerning the propriety of this investigatory stop.

tered the *Miranda* warning again and requested that Lamp accompany them to patrol headquarters. Lamp agreed, but his request to follow the officers in his van rather than in a patrol car was denied.

After arriving at patrol headquarters, Lamp was questioned by Officer Anderson. Lamp informed Anderson that he could account for his whereabouts unti midnight. Anderson contradicted this statement by informing Lamp that another officer had observed Lamp at a car wash. Lamp thereupon requested permission to talk to his attorney. Lamp placed a call to his attorney, and Anderson left the room. When Anderson returned to the room, Lamp said that he had talked to his attorney's wife and was told that the attorney was asleep. He was to call back if he was arrested or needed to communicate with his attorney.

Officer Collins entered the room and continued the interrogation, focusing on the stabbing of Miss Oliver. When the interrogation became accusatory, Lamp again requested to call his attorney. Lamp was successful in talking with his attorney on this second occasion. At the hearing on the motion to suppress, a dispute developed as to what occurred after the second telephone call. Lamp testified that his attorney advised him to remain silent and that he so informed Officers Collins and Anderson. Collins testified that Lamp said his attorney had not advised him to remain silent. Collins further testified that Lamp was cooperative after the second phone call and that Lamp engaged in "small talk" while refusing to further discuss the Oliver murder. Anderson testified that he advised Lamp that he was free to leave. Notwithstanding his understanding that he was free to leave, Lamp elected to remain

and "get it over with." Based on its independent review of the record, the Iowa Supreme Court found the officers' testimony far more credible than that of Lamp. *State v. Lamp*, 322 N.W.2d 48 (Iowa 1982). These findings are "presumed correct unless [Lamp] shall establish ... that such factual determination is not fairly supported by the record." The record developed at the suppression hearing supports the determination of the Iowa Supreme Court, and the district court properly deferred to these findings.[3]

Lamp argues that upon invocation of his right to speak with counsel during his custodial interrogation,[4] all questioning should have ceased and that statements obtained thereafter should have been suppressed.

 The Fifth and Fourteenth Amendments protect an accused from compelled self-incrimination, and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) made it clear that statements made by an accused in a custodial interrogation would be suppressed unless they had been preceded by advice to the accused that he had the right to remain silent and the right to the presence of counsel. An accused may waive his rights and respond to the interrogation, *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), but there is a heavy burden upon the prosecution to demonstrate such a waiver. *Id.* at 373, 99 S.Ct. at 1757.

> [T]he Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded

---

**3.** In arguing that the Iowa Supreme Court's findings are not supported by the record, Lamp points out that the district court rejected the state's position that a custodial interrogation was not involved. Further, Lamp cites footnote 7 of the district court's opinion which states, "[w]ere this Court writing on a clean slate and not constrained by § 2254(d), its findings might be different." Lamp's assertions in this regard serve to emphasize the fact that the district

court applied the proper standard of review and did not merely accept the state court findings without searching out the record.

**4.** The state does not cross appeal from the District Court's opinion holding that a custodial interrogation was involved and that Lamp had sufficiently invoked his *Miranda* rights.

to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the policy only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981).[5]

The "totality of the circumstances" of each case must be examined to determine if an accused has made a voluntary, knowing and intelligent waiver of his rights to remain silent and to have counsel present. *Edwards v. Arizona, supra* at 482, 101 S.Ct. at 1883; *Wyrick v. Fields*, 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982).

Writing for the plurality in *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), Justice Rehnquist explained that *Edwards* required a two-step analysis is to determine whether or not there has been a valid waiver of an accused's rights to remain silent and to have counsel present during a custodial interrogation. First, did the accused initiate dialogue with the police, i.e., did the suspect "evinc[e] a willingness and a desire for a generalized discussion about the investigation?" *Id.* at 1045, 103 S.Ct. at 2835. If the first inquiry is answered in the affirmative, the prosecution carries the additional burden of showing "that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Id.* at

1044, 103 S.Ct. at 2834. This second inquiry focuses upon "whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Edwards v. Arizona supra*, 451 U.S. at 486, n. 9, 101 S.Ct. at 1885, n. 9. Justice Rehnquist explained that "initiation" of the conversation would also be a factor to be taken into consideration in resolving the waiver issue.

Justice Marshall, writing in a dissenting opinion joined by Justices Brennan, Blackmun and Stevens, agreed that there was a two-step inquiry in cases such as the one at bar, but differed in his answers to these two points of inquiry as applied to the facts of *Oregon v. Bradshaw.*[6]

Justice Powell concurred in the judgment of the plurality, but wrote separately to express the concern that such a two-step inquiry would serve to increase confusion in this area rather than to clarify an already difficult constitutional inquiry.[7] It was his opinion that the sole matter of inquiry should be an examination of the totality of the circumstances to determine whether or not the accused had made a knowing and intelligent waiver of his rights to remain silent and have counsel present. *Id.* 462 U.S. at 1044, 103 S.Ct. at 2834.

Recognizing that we venture upon shifting sands, we address the facts in this case to determine whether or not the prosecution carried its burden of proving that Lamp "evinced a willingness and a desire for a generalized discussion about the investigation," *Oregon v. Bradshaw*, at 1045, 103 S.Ct. at 2835, and if so, whether or not

---

**5.** Although the interrogation took place prior to the Supreme Court's decision in *Edwards v. Arizona, supra*, the controlling principles of *Edwards* apply since Lamp's appeal was pending at the time *Edwards* was handed down. *Shea v. Louisiana*, — U.S. —, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).

**6.** With respect to the "initiation" inquiry, it should be noted that Justice Marshall wrote in terms of communication initiated by the ac-

cused *"about the subject matter of the criminal investigation."* Dissenting opinion at 2839. (Emphasis in original).

**7.** Justice Powell also joined in the judgment in *Edwards*, but declined to join in the opinion of the court because he was "not sure what it mean[t].' *Edwards v. Arizona, supra*, 451 U.S. at 488, 101 S.Ct. at 1887.

he made a knowing and intelligent waiver of his rights to remain silent and have counsel present. In this case Lamp requested permission to call his attorney on two occasions during the interrogation:

Interrogation ceased on both occasions when defendant requested permission to telephone his attorney. On the first occasion defendant's attorney was asleep; defendant conversed with his wife and was told to call back if defendant was arrested or otherwise found it necessary to consult with counsel. According to the interrogating officer's testimony at the suppression hearing and at trial, he asked defendant what his attorney had said upon reentering the interrogation room. Defendant then asked if he were under arrest and, if so, what the charge was. The officer responded that defendant was not under arrest and was free to go if he wished. The officer testified that defendant responded that due to the fact that the law enforcement officials were looking for a thirty-one-year-old male named Fred who was driving a blue van he could understand why the officers wanted to question him and that he would stay and talk.

State v. Lamp, supra at 55.

■ As the opinion of the plurality in Oregon v. Bradshaw, supra, demonstrated, "initiation" in this context is not limited to its ordinary dictionary sense. The fact that the officer asked Lamp after the first phone call "what happened" does not necessarily mean that the authorities "initiated" the continuing conversation in the Edwards sense. "Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in Edwards." Such is the case herein. The facts set forth above from the Iowa Supreme Court's opinion, State v. Lamp, supra, demonstrate that Lamp had "a willingness

and a desire for a generalized discussion about the investigation." Oregon v. Bradshaw, supra at 1045, 103 S.Ct. at 2835. Thus, Lamp "initiated" the conversation subsequent to his first call to his attorney. Turning to the question of waiver, the court necessarily keeps in mind those facts which show that Lamp initiated the conversation. Also Lamp, who had a previous criminal history, was aware of police proceedings and stated he was aware of his constitutional rights, State v. Lamp, supra at 56, "did not express a desire to deal with the law enforcement officials only through counsel." Id. at 55. Under these circumstances, we agree with the District Court and Supreme Court of Iowa that Lamp made a voluntary, knowing and intelligent waiver of his right to remain silent and to have counsel present after his first request to telephone his attorney.

■ We now turn to his second request to call his attorney after the interrogation became accusatory.[8] The testimony of the officers, as found by the Iowa Supreme Court and supported by the record, was that Lamp informed them that his attorney had not advised him to remain silent. He was told he was not under arrest and that he was free to go. Id. at 56. Lamp continued to express an interest in continuing with the interrogation in order to get the matter concluded. His actions after the second telephone call amounted to an "initiation" of further conversation. Subsequent to the second telephone call and throughout the interrogation, Lamp, an individual familiar with police interrogation, acted as though he thoroughly understood his constitutional rights. Given his experience and his conduct, he demonstrated a voluntary, knowing and intelligent waiver of his rights to remain silent and to have counsel present after the second telephone call as well as throughout the interrogation.

---

**8.** Even if the court agreed with Lamp with respect to the interrogation subsequent to the first telephone call, it would not be constrained to necessarily suppress the statement subsequent

to the second telephone call. A separate inquiry would still be required. Oregon v. Elstad, —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

The opinion of the District Court is affirmed.