**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2946

_____

Fred Louis Lamp,                          *
                                          *
          Plaintiff - Appellant,          *
                                          *   Appeal from the United States
     v.                                   *   District Court for the
                                          *   Southern District of Iowa.
State of Iowa; Director, Division         *
of Adult Corrections; County              *
Attorney in and for Polk County,          *
                                          *
          Defendants -                     *
Appellees.

_____

          Submitted:  March 13, 1997
                         Filed:  August 13, 1997

_____

Before McMILLIAN, FLOYD R. GIBSON, AND HANSEN, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

    Appellant Fred Louis Lamp brought this habeas corpus action under 28
U.S.C. § 2254 (1994),[1] challenging his conviction for first-degree murder.
Lamp raised nine

_____

[1]On April 24, 1996, President Clinton signed the Anti-Terrorism and Effective
Death Penalty Act of 1996, Pub. L. No. 104-132, 1996 U.S.C.C.A.N. (110 Stat. 1214)
1214.  The amendments to the statute which deal with habeas corpus petitions in
noncapital cases generally apply "only to such cases as were filed after the statute's
enactment," Lindh v. Murphy, 65 U.S.L.W. 4557, 4558 (U.S. June 23, 1997), and
Lamp filed this habeas suit long before the recent revisions became law.  Furthermore,
the parties have not argued that the provisions of the Act should apply in this case.
Therefore, we consider the issue waived.  See Cornell v. Nix, No. 95-3829, slip op. at
2 n.2 (8th Cir. July 16, 1997).

possible grounds for habeas relief in his petition before the district court. The court granted summary judgment on five of Lamp's claims, reasoning that Lamp abused the writ by bringing several of them, and that the others were procedurally defaulted. The court determined that two of Lamp's claims failed to raise issues of constitutional concern. The court reached the merits of Lamp's two remaining claims, but subsequently denied his request for habeas relief. Lamp appeals, and we affirm.

## I.    BACKGROUND

On May 10, 1980, at approximately 12:35 a.m., two people discovered Melody Oliver lying in the middle of a road in Des Moines, Iowa. Oliver had been raped and stabbed but was still alive. Oliver told those who found her that her assailant's name was Fred and that he had been driving a blue van. Authorities at the scene believed that Lamp, a suspect in another case, matched the description Oliver gave of her assailant. Oliver died shortly after being taken to the hospital.

At approximately 4:20 a.m., a Polk City police officer observed a blue van driving toward the city. The officer stopped the van to investigate. When the officer realized that the driver of the van was Lamp, he radioed for assistance. The officers took Lamp in for questioning and eventually placed him under arrest for the murder of Melody Oliver. Lamp's first habeas petition raised arguments concerning the method by which he was interrogated. The facts underlying those arguments are set forth fully in a prior panel opinion. See Lamp v. Farrier, 763 F.2d 994, 996 (8th Cir.), cert. denied, 474 U.S. 1009 (1985).

While housed in the Polk County Jail, Lamp occupied a cell adjacent to the cell of Keith Trotter, who was imprisoned on theft charges. John Lindbloom, another prisoner with whom Lamp was already acquainted, told Lamp that Trotter was a trustworthy prisonmate. Lamp subsequently confessed to Trotter that he murdered Oliver and another woman named Carol Donnelly. Soon thereafter, Polk County Detective Jim Locke met with Trotter to encourage him not to plead guilty to theft until he was able to gain representation. During this meeting, Trotter informed Locke that Lamp admitted to him that he killed Oliver. Locke told Trotter to "keep his mouth shut [and] keep his ears open," and that if he heard anything else to let him know. Over the next couple of weeks, Trotter met with Locke several times to report on Lamp's confessions. Locke kept a log detailing his conversations with Trotter. The log noted that Trotter had not received any promises or special treatment in exchange for information regarding Lamp.

During Lamp's murder trial, Trotter testified that Lamp admitted killing Oliver. Trotter relayed many details of the crime which Lamp had elucidated to him while in jail. On November 25, 1980, an Iowa jury convicted Lamp of first degree murder, and on December 29 of the same year he was sentenced to life in prison. Lamp appealed his conviction to the Supreme Court of Iowa, raising several issues.[2] The court determined that Lamp's contentions were without merit and affirmed the conviction.

---

[2]Before the Supreme Court of Iowa, Lamp argued that the trial court made the following errors: (1) denying a motion to suppress evidence obtained during an unreasonable stop of his vehicle; (2) denying a motion to suppress evidence obtained pursuant to an unlawful search of his vehicle; (3) denying a motion to suppress evidence obtained pursuant to an unreasonable search of his person; (4) denying a motion to suppress evidence obtained during an in-custody interrogation conducted in violation of his right to counsel; (5) denying a motion to suppress evidence obtained pursuant to a search warrant issued on the basis of unlawfully seized evidence; (6) admitting hearsay testimony of officers concerning the investigation of the homicide; and (7) admitting results of blood analysis without an adequate foundation showing a proper chain of custody.

See State v. Lamp, 322 N.W.2d 48 (Iowa 1982).  On August 27, 1982, Lamp filed an application for a writ of habeas corpus in the United States District Court for the Southern District of Iowa, alleging violations of his Fifth Amendment right to have counsel present during a custodial interrogation and his Sixth Amendment right to counsel.  The arguments raised in Lamp's first habeas petition focused entirely upon the interrogation which immediately followed his detention and apprehension. The district court denied Lamp's request for habeas relief.  The Eighth Circuit affirmed the district court's judgment.  See Lamp, 763 F.2d at 999.

On January 17, 1986, Lamp filed an application for postconviction relief in the Polk County District Court.[3]  The court rejected each of the arguments raised by Lamp.  On appeal to the Iowa Court of Appeals, Lamp raised two issues:  (1) whether his Sixth Amendment right to counsel and Fifth Amendment right against self-incrimination were violated when Trotter "interrogated" him, and (2) whether his Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to move to

---

[3]Lamp raised eight arguments in his petition for post-conviction relief:  (1) the State violated his Sixth Amendment right to counsel and Fifth Amendment right against self-incrimination when Trotter "interrogated" him without the presence of counsel; (2) the State violated his Sixth Amendment right to effective assistance of counsel when trial counsel failed to move to suppress Trotter's testimony; (3) the State violated his Sixth Amendment right to effective assistance of counsel when trial counsel failed to obtain an expert to testify concerning lab techniques; (4) the State violated his Sixth Amendment right to effective assistance of counsel when trial counsel failed to independently examine blood tests; (5) the State violated his Sixth Amendment right to effective assistance of counsel when trial counsel failed to discover that Lamp's daughter's blood type matched that found in his van; (6) the State violated his Sixth Amendment right to effective assistance of counsel when appellate counsel failed to raise claims (2) through (5); (7) the State violated his Fourteenth Amendment right to due process; and (8) newly discovered evidence that neither he nor his attorney knew about at the time of trial warranted a new trial.

suppress Trotter's testimony. The Iowa Court of Appeals ruled against Lamp on both issues.

Following his unsuccessful attempt at postconviction relief in the Iowa courts, Lamp filed his second federal habeas petition. Lamp claimed the following errors: (1) he received ineffective assistance of counsel when trial counsel failed to question the medical examiner about the chain of custody for the blood evidence; (2) the State failed to establish a proper chain of custody for the blood evidence; (3) the State used unreliable blood tests; (4) he received ineffective assistance of counsel during his first federal habeas proceeding; (5) the State violated Lamp's Fifth Amendment right to due process when it failed to disclose potentially exculpatory evidence to the defense; (6) his Fifth Amendment right against self-incrimination was violated when Trotter interrogated him; (7) his Sixth Amendment right to counsel was violated when Trotter interrogated him; (8) he received ineffective assistance of counsel when trial counsel failed to move to suppress Trotter's testimony; and (9) he received ineffective assistance of counsel during his post-conviction proceedings. The State of Iowa moved for summary judgment on all nine claims. The district court granted summary judgment on claims One, Two, Three, Five, and Six, reasoning that several of the claims represented an abuse of the writ, and those that did not were procedurally defaulted. The court granted summary judgment on claims Four and Nine because they did not properly assert violations of constitutional rights. The court reached the merits of claims Seven and Eight, but concluded that Lamp could not prevail on those issues. The district court therefore denied Lamp's petition for habeas relief. Lamp now appeals.

## II. DISCUSSION

On appeal, Lamp argues that the district court committed error when it granted summary judgment on claims One, Two, Three, Five, and Six. We review a grant of summary judgment de novo, and on appeal must determine "whether the record, when

viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Schrier v. Halford, 60 F.3d 1309, 1310 (8th Cir. 1995) (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Lamp asserts that he did not default on counts One and Six because they were substantially similar to arguments he raised in the Iowa postconviction court. Specifically, Lamp argues that Count One in his habeas petition (ineffective assistance of trial counsel for failure to question the medical examiner about chain of custody) was not procedurally defaulted because it raised the same argument as Count Three from his state postconviction petition (ineffective assistance of trial counsel for failure to obtain a defense expert to testify concerning unacceptable lab procedures). While Lamp's assertion that these two claims are similar in nature is not wholly without merit, the district court correctly determined that Count One was procedurally barred because Lamp did not appeal the denial of post-conviction relief on Count Three. See Lowe-Bey v. Groose, 28 F.3d 816, 818 (8th Cir.) ("The failure to raise the ineffective assistance claims in an appeal from the denial of [post-conviction] relief raises a procedural bar to pursuing those claims in federal court."), cert. denied, 513 U.S. 1061 (1994).

Lamp also contends that he did not procedurally default Count Six in his habeas petition (violation of his Fifth Amendment right against self-incrimination through the use of a jailhouse informant) because Count One in his petition for postconviction relief asserted the identical argument. However, the district court did not, as Lamp contends, determine that Count Six was procedurally barred. Rather, the court concluded that Lamp abused the writ by bringing Count Six because he failed to raise the argument in his first habeas petition. We agree that Lamp's assertion of this argument in his second habeas petition abused the writ because the argument could have been, but was not, raised during his first habeas proceeding. See McCleskey v. Zant, 499 U.S. 467, 490

(1991); Murray v. Delo, 34 F.3d 1367, 1372 (8th Cir. 1994), cert. denied, 515 U.S. 1136 (1995).

A federal habeas petitioner can overcome a procedural default or an abuse of the writ by showing cause and prejudice, see McCleskey, 499 U.S. at 493, or by showing "that a fundamental miscarriage of justice would result from a failure to entertain the claim," id. at 495. Lamp argues that he presented a genuine issue of material fact as to whether he established cause for his procedural default on counts One, Two, Three, and Five.[4] To establish cause for his procedural default, Lamp must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). In proceedings in which the Sixth Amendment requires legal representation, ineffective assistance of counsel is cause for a procedural default. See id. However, because a defendant is not constitutionally entitled to effective assistance of counsel in state postconviction proceedings, see Coleman v. Thompson, 501 U.S. 722, 752 (1991); Nolan v. Armontrout, 973 F.2d 615, 616-17 (8th Cir. 1992), a state postconviction attorney's rendering of ineffective assistance will not constitute cause for a procedural default. See Nolan, 973 F.2d at 617. Lamp attempts to avoid this result by arguing that he has shown cause for his failure to properly raise his claims because he was denied his "constitutional right [of] meaningful access to the courts during his postconviction proceedings." Lamp Br. at 24. While it is conceivable that the denial of access to the

---

[4]Lamp also argues that he has established cause for failing to raise Count Six because he was denied meaningful access to the Iowa courts during his postconviction proceedings. Lamp continuously assumes the district court determined that Count Six was procedurally defaulted. However, the district court specifically concluded that Lamp's failure to raise Count Six "in the first habeas corpus proceeding constitutes an abuse of the writ and bars review in this action." App. at 19. Lamp has only asserted cause for his failure to raise claims that were procedurally defaulted. He has not shown cause to excuse his failure to raise Count Six in his first habeas proceeding, and we will not seek to establish cause for Lamp's abuse of the writ sua sponte.

courts may be imputed to the State and thus constitute cause in some circumstances, we conclude that Lamp did in fact have meaningful access to the postconviction court and therefore has failed to establish cause to excuse his procedural default.

A criminal defendant's "right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). Additionally, a petitioner claiming lack of access to the courts must show that "the lack of a library or the attorney's inadequacies hindered [his] efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). If a state postconviction court provides a defendant with adequate legal assistance, the right of access to the courts is satisfied. See Schrier, 60 F.3d at 1313. Lamp contends that he did not receive adequate legal assistance because he was only permitted to communicate with his attorney through the mails and his attorney neglected to raise claims that Lamp specifically directed him to raise.

We first note that "'adequate[]' as used in Bounds to modify 'assistance from persons trained in the law,' refers not to the effectiveness of the representation, but to the adequacy of the prisoner's access to his or her court-appointed counsel." Id. at 1314; accord Lewis v. Casey, 116 S. Ct. 2174, 2181 (1996) (clarifying that the right of access to the courts does not require the State to "enable the prisoner to discover grievances, and to litigate effectively once in court" (emphasis omitted)). The right of access to the courts is satisfied so long as the State provides the defendant with the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 116 S. Ct. at 2182. We conclude that the state postconviction court provided Lamp with this capability. The State provided Lamp with an attorney who adequately presented claims on Lamp's behalf. Furthermore, Lamp was able to communicate with his attorney through the mail during the process

of bringing his claims.  We hold that these efforts satisfied Lamp's right of access to the courts.

Lamp also complains that his attorney failed to raise several claims he requested the attorney to bring, which impeded his access to the courts.[5]  Lamp's contention appears to illustrate an effectiveness argument rather than an adequacy of access argument, which is not the standard enunciated in Bounds.  See Schrier, 60 F.3d at 1314.  However, even under the constitutional ineffectiveness standard, to "impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy."  Jones v. Barnes, 463 U.S. 745, 754 (1983); accord Blair v. Armontrout, 976 F.2d 1130, 1139 (8th Cir. 1992) ("[T]he Supreme Court has squarely rejected the argument that appellate counsel has a duty to raise every nonfrivolous issue his client requests."), cert. denied, 508 U.S. 916 (1993).  Likewise, under the Bounds access to courts standard, a defendant is not entitled to an attorney who will raise every nonfrivolous claim he wishes to pursue.  For, once the State has provided a petitioner with an attorney in postconviction proceedings, it has provided him with the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis, 116 S. Ct. at 2182.  As such, the State provided Lamp with meaningful access to the courts.  Therefore, Lamp has failed to establish cause for procedurally defaulting claims One, Two, Three, and Five.

---

[5]Lamp also argues that his attorney was an agent of the State and that his postconviction attorney's inadequacy and ineffectiveness are therefore "objective factor[s] external to the defense."  Murray, 477 U.S. at 488.  Essentially, this is nothing more than an attempt to show cause for his procedural default through a method that we have consistently rejected, for "[i]t is well settled that 'there is no constitutional right to an attorney in state post-conviction proceedings.'"  Mack v. Caspari, 92 F.3d 637, 640 (8th Cir. 1996) (citing Coleman, 501 U.S. at 752) (alteration omitted), cert. denied, 117 S. Ct. 1117 (1997).  Therefore, Lamp "cannot claim constitutionally ineffective assistance of counsel in such proceedings."  Coleman, 501 U.S. at 752.

The district court addressed the merits of counts Seven and Eight. Though the district court recognized that Lamp abused the writ by bringing these claims because he could have raised them in his first habeas petition, it determined that "cause" existed for the abuse. Lamp argued that cause existed for his abuse of the writ on Count Seven because his attorney in the first habeas proceeding was ineffective for failing to raise the claim. Although the district court recognized that ineffective assistance of counsel in a petitioner's first habeas proceeding cannot constitute cause, see Washington v. Delo, 51 F.3d 756, 760 (8th Cir.), cert. denied, 116 S. Ct. 205 (1995), it determined that the State waived the abuse of the writ defense because it did not raise the argument in the state postconviction court or before the Supreme Court of Iowa. We note, however, that the abuse of the writ defense does not properly arise until a petitioner files a second habeas petition alleging claims that were not, but should have been, brought in the first habeas petition. See McCleskey, 499 U.S. at 486-89. Therefore, the State cannot be faulted for failing to raise the defense in the state courts. Furthermore, even had the State failed to raise the defense before the district court, we have previously held that a district court may consider the abuse of the writ sua sponte, provided the petitioner is given a fair opportunity to respond. See United States v. Fallon, 992 F.2d 212, 213 (8th Cir. 1993).[6] Lamp claims that cause existed for his failure to raise Count Seven in his first habeas petition because he received ineffective assistance of counsel in that proceeding. Because a petitioner may not establish cause based on ineffective assistance of habeas counsel, see Blair, 976 F.2d at 1139, Lamp has not shown cause for his abuse of the writ. Thus, we affirm the district court's denial of habeas relief on that claim.

On Count Eight, the district court determined that even though Lamp abused the writ, he had cause for doing so because he received ineffective assistance of counsel

_____

[6]Following a thorough review of the record, we conclude that the State raised Lamp's abuse of the writ during the district court proceedings and Lamp was given a full and fair opportunity to respond.

in his first habeas proceeding.  The court adduced that because Lamp had the same attorney at trial, on appeal, and in his first habeas proceeding, his attorney could not have been expected to raise his own ineffectiveness. In so reasoning, the district court relied on several cases which held that where a defendant's trial counsel also represents him on appeal, the defendant may raise a claim of ineffective assistance for the first time collaterally.  See Osborn v. Shillinger, 861 F.2d 612, 622-23 (10th Cir. 1988); Alston v. Garrison, 720 F.2d 812, 816 (4th Cir. 1983), cert. denied, 468 U.S. 1219 (1984).  However, because the right to counsel "extends to the first appeal of right, and no further," Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), ineffective assistance of counsel in such a proceeding may establish cause.  To the contrary, "[a defendant] may not establish 'cause' based on ineffective assistance of counsel in a federal habeas case." Blair, 976 F.2d at 1139.  Therefore, Lamp is not able to show cause based on ineffective assistance of his first habeas attorney even though that same attorney represented him at trial and on appeal. Accordingly, because Lamp has not shown cause for his abuse of the writ, we affirm the district court's denial of habeas relief on Count Eight.

## III.  CONCLUSION

For the reasons set forth above, we affirm the district court's decision to deny Lamp's petition for a writ of habeas corpus.

A true copy.


Attest:



CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-