**George ARCE, Plaintiff,**

v.

**Hans G. WALKER, et al., Defendants.**

**No. 89–CV–1330L.**

United States District Court,
W.D. New York.

July 6, 1999.

Richard S. Crummins, Flor M. Conlon, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for Plaintiff.

George Arce, Fallsburg, NY, pro se.

Charles D. Steinman, James L. Gelormini, Office of New York State Attorney General, Sylvia Wade Josh, New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

Plaintiff George Arce filed this civil rights action under 42 U.S.C. § 1983 on October 11, 1987. Defendants are supervisory staff and correction officers at Attica Correctional Facility ("Attica"), a prison run by New York State Department of Correctional Services ("DOCS"). Arce's amended complaint includes claims that he was deprived of liberty without due process in violation of the Fourteenth Amendment to the United States Constitution, was subjected to living conditions that amounted to cruel and unusual punishment in violation of the Eighth Amendment, and was denied access to court and subjected to retaliation for his litigation in violation of the First and Fourteenth Amendments.

Arce initially proceeded *pro se;* however, this Court has appointed counsel to represent him. He moved for partial summary judgment in July, 1995. Defendants subsequently cross moved for summary judgment. In November, 1995, this Court denied Plaintiff's summary judgment motion, granted defendants motion, and ordered that this action be dismissed. Arce appealed. In March, 1998, the Second Circuit Court of Appeals affirmed this Court's order granting process and Eighth Amendment claims, but reinstated the access to court and retaliation claims. *Arce v. Walker,* 139 F.3d 329, 337–38 (2d Cir. 1998). On remand, Defendants moved for summary judgment on those claims. Arce has submitted affidavits and a Memorandum of Law in opposition to defendants' motion.

Now, upon review of the parties' submissions, and upon consideration of the issues presented herein and applicable law, defendants' motion for Summary Judgment is granted, and this action is dismissed, for the following reasons.[1]

---

1. Submissions include the Amended Complaint, Item no. 60, Answers to the Amended Complaint, Items no. 61 through 86, Defendants' Motion for Summary Judgment, with supporting Memorandum and Statement of Facts, Items no. 140–142, and Plaintiff's Declaration, Affirmation and Memorandum in Opposition to Defendants' Motion for Summary Judgment, Items no. 146–148.

The parties have submitted numerous exhibits, which are designated by the number of the Item, and exhibit number or letter (for example, "Ex. 140–1", "Ex. 142A"). Where the parties have submitted duplicate exhibits, only the first filed exhibit is cited.

## BACKGROUND

Arce's claims are based on events that occurred while he was temporarily housed at Attica Correctional Facility for eighteen days in late 1986 and early 1987. Arce had been an Attica inmate previously, before being transferred to Clinton Correctional Facility. Following his transfer to Clinton, he filed a civil rights action in the Western District of New York, based on events that had allegedly occurred at Attica. That case was captioned *Arce v. Ward*, 78–CV–601C. On December 22, 1986, Arce was transferred from Clinton to Attica to enable him to attend court proceedings related to *Arce v. Ward.* The transfer was ordered by the presiding judge in that case. Ex. 140B. There is no indication that Arce or the defendants in *Arce v. Ward* objected to the transfer.

Arce remained at Attica until January 8, 1987, when he was transferred back to Clinton. Item no. 147, ¶ 5. During his eighteen days at Attica, Arce remained "on the books" at Clinton, which means that he was still considered to be an inmate of the latter facility. As was customary in cases where an "out-to-court" inmate was temporarily housed at Attica, Arce was placed in the Involuntary Protective Custody ("IPC") unit. Such a placement was deemed necessary by DOCS since Arce's institutional records were not transported with him, and Attica staff were not able to determine whether he had any enemies in the facility.

At that time, the IPC unit was located on one gallery of Attica's Special Housing Unit ("SHU"). Arce was not considered to be an SHU inmate, but was subject to rules applicable to IPC inmates, which are somewhat more restrictive than rules governing inmates in general population, though less strict than SHU rules. Item no. 142, ¶ 1, Ex. 148G, pages 23–26, 32, 35–36.

Arce claims that his legal papers were kept from him while he was at Attica, that some of his papers were stolen or destroyed, and that he was denied access to the law library. Arce's legal papers had been transported from Clinton to Attica, together with some personal belongings that he had packed, but, the items were not given to Arce when he arrived at Attica, and he did not have access to his legal papers during his stay.

Arce claims that he never received his property bag at Attica and examined it only when he arrived back at Clinton. It was during that inspection that he discovered that some of his legal papers were missing, and that other papers were torn and out of order. Since no one other than corrections staff had access to his possessions, Arce deduced that a correction officer must have looked through his legal papers and tampered with them. Ex. 140A, Ex. 140–2, pages 88–89.

Defendants deny knowledge of anyone tampering with Arce's papers. Defendants also deny taking any action against Arce to deny him access to the courts or to retaliate against him for filing a prior lawsuit.

## DISCUSSION

### I. Summary Judgment Standards

Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where "there is no genuine issue of any material fact and ... the moving party is entitled to a judgment as a matter of law." A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e) provides that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."

In deciding a motion for summary judgment, evidence and inferences drawn from the evidence must be "viewed in the light

most favorable to the party opposing the motion." *Adickes v. S.H. Kress and Co.,.* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). However, a summary judgment motion will not be defeated merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or of "conjecture or surmise," *Bryant,* 923 F.2d at 982.

**II. Access to Court**

█ Prisoners have a constitutional right of access to court. *Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). That right is implicated when prison authorities "actively interfer[e] with inmates' attempts to prepare legal documents." *Lewis,* 518 U.S. at 350, 116 S.Ct. 2174 (citing *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). It also " 'requires prison authorities to assist inmates in the preparation and filing of meaningful papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Lewis,* 518 U.S. at 346, 116 S.Ct. 2174 (quoting *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491).

█ An access-to-court claim necessarily involves a showing of "relevant actual injury." *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174. In addition to showing officials' interference with, or failure to assist his advocacy efforts, a prisoner

> must go one step further and demonstrate that [prison practices] hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he

could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by the inadequacies of the law library that he was unable even to file a complaint.

*Id.* *Lewis* equated the right of access to court with "the right to bring to court a grievance that the inmate wished to present," 518 U.S. at 354, 116 S.Ct. at 2181. This language has been interpreted to mean that "[p]risoners need only have the minimal help necessary to file legal claims." *Madrid v. Gomez,* 150 F.3d 1030, 1041 (9th Cir.1998) (internal quotation omitted). However, courts have also cited *Lewis* as supporting the right to "proceed with a legal claim," *Wilson v. Blankenship,* 163 F.3d 1284, 1291 (11th Cir.1998) (quoting *Sabers v. Delano,* 100 F.3d 82, 84 (8th Cir.1996)), which suggests, at least, that *pro se* inmates should have the means to defend against dispositive motions and to prepare for trial.

█ *Lewis* also held:

> [t]o demand the conferral of ... sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate population is effectively to demand permanent provision of counsel, which we so not believe the constitution requires

518 U.S. at 354, 116 S.Ct. 2174. This language suggests that a prisoner must allege something more than that the quality of his argument was diminished because of defendants' practices. In simple terms, a claim that prison practices kept a prisoner from raising an argument or asserting a claim in his pleadings, in response to a dispositive motion, or at trial would likely suffice to show harm; however, a claim that the prisoner could have made a more compelling or sophisticated argument would not. Such a distinction may lead to abstruse analysis of the impact of prison practices on prisoners' litigation, but it is a necessary product of the *Lewis* decision.

█ There are two other significant limitations on the right of access-to-court, as

defined in *Lewis*. First, a practice that is reasonably related to legitimate penological interests must be upheld, even if it negatively impacts on prisoners' access to court. *Id.* 361, 116 S.Ct. at 2185.

■ Second, access-to-court, as a Constitutional right, only applies to prisoners' lawsuits that seek "to attack their sentences directly or collaterally, [or] to challenge the conditions of their confinement." The right does not extend to cases unrelated to the fact, duration or conditions of a prisoner's confinement, for example, "shareholder derivative actions [or] slip-and-fall claims." *Id.* at 355, 116 S.Ct. at 2182. Some courts and commentators have interpreted *Lewis* to limit the right of access to "habeas corpus petitions or civil rights actions." *Lewis v. Casey:* Tightening the Boundaries of Prisoner Access to the Courts? 18 *Pace L.Rev.* 377, 378 (1998); or cases that "attack [the prisoner's] sentence [ ]or pursue vindication of a constitutional right." *Carter v. McCaleb,* 29 F.Supp.2d 423, 430 (W.D.Mich.1998). However, it appears to be an open question whether a challenge to prison conditions based on state law meets the *Lewis* criteria.[2]

### A. Arce's Legal Papers

Arce claims that defendants impaired his access to court by confiscating and damaging his legal papers, and by denying him access to the law library. It is not precisely clear why Arce was denied access to his personal property for the length of his eighteen day stay at Attica. Attica officials may have had a legitimate interest in placing Arce in protective custody until they could determine whether he had enemies at the facility. It was also not unreasonable for officials at the institution to check an inmate's belongings for contraband. However, DOCS' regulations provide that that an inmate's personal property should "be issued within a reasonable time after [the inmate's] admission to SHU." Ex. 142B, ¶ 19.

Although there may be issues of fact as to whether Arce's property was damaged and whether the institution had a legitimate basis to keep it from Arce, in this case, it is of no consequence since Arce has failed to demonstrate that defendants' actions had any impact on his access to court.

Although "the taking of an inmate's papers will often interfere with an inmate's right of access to courts," *Goff v. Nix,* 113 F.3d 887, 892 (8th Cir.1997), the Court may not presume harm, and some showing of impaired access is required. *Oliver v. Fauver,* 118 F.3d 175, 178 (3d Cir.1997).

■ A prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to court claim. *Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir.1999). He must "designate[ ] specific facts showing a genuine issue for trial." *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996).

■ Although Arce claims that defendants' actions impaired his access to court, the evidence does not support that broad assertion. Arce identifies two Western District of New York cases in which his court access was allegedly impaired. Both cases are captioned *Arce v. Ward;* they have index numbers 78–CV–601C and 80–CV–373C. However, 80–CV–801C was dismissed on March 14, 1984 by order of the court, well before the improper acts attributed to defendants, and all papers in both actions were subsequently filed in 78–CV–601C.

Arce does not allege that he was prevented from attending any court appear-

---

2. It may be that the right to assert state law claims regarding conditions of confinement can be resolved by reference to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Under *Parratt,* the focus is on "the existence of an adequate state remedy." 451 U.S. at 542, 101 S.Ct. 1908, which implies that only prison practices that render the state remedy "inadequate" would be actionable.

ance or from communicating with his attorney in *Arce v.. Ward.* In fact, it does not appear that he missed any deadline or failed to comply with any court order. Ex. 140A, ¶ 12, Ex. 140–1, ¶ 8.

Although Arce states that a list of witnesses was missing as well as certain affidavits, he does not identify any of the witnesses by name or describe their alleged involvement in the case. Nor does he describe their expected testimony or how such testimony was likely to affect the outcome of the case. In fact, defendants have submitted an affidavit from his trial attorney in *Arce v. Ward,* James Donathen, Esq., (Ex. 140–3) and Donathen states that he knows of no adverse impact on the case due to the defendants' actions.

It is certainly noteworthy that plaintiff's own lawyer does not believe his efforts on Arce's behalf were impaired to any degree of defendants' activities. Furthermore, there is no indication that either Arce or Donathen ever complained at the time that they were unable to proceed with the litigation because of the unavailability of Arce's papers. Ex. 140B. In fact, it appears that Arce's counsel obtained a subpoena for at least one prisoner witness and there is no evidence that the matters complained of by Arce had any impact on the actual trial.

In sum, Arce's conclusory assertions that he lost *Arce v. Ward* because defendants took his legal papers is unsupported by any facts and is contrary to the record.

Arce's claim must also be assessed in light of the fact that he was represented by counsel. In most instances, "the right of access to courts is satisfied" when the court provides a prisoner with legal assistance, *Lamp v. Iowa,* 122 F.3d 1100, 1105 (8th Cir.1997) (citing *Schrier v. Halford,* 60 F.3d 1309, 1313 (8th Cir.1995)). When a litigant is represented by an attorney, it is up to counsel to obtain and introduce relevant evidence and testimony; and when a party or nonparty withholds evidence, it is up to counsel to seek enforcement of discovery, or appropriate sanctions.

Arce's access to court claim, as it relates to defendants' alleged confiscation and/or destruction of his legal papers, must, therefore, be dismissed.

**B. Law Library Materials**

Arce claims he was denied law library access for the eighteen days that he spent in Attica's IPC and that this denied him access to the courts. I disagree. Given the relatively brief duration of this denial, one would not expect it to affect Arce's ability to timely file a claim, respond to a dispositive motion, or meet a court imposed deadline, *Kensu,* 87 F.3d at 175, and Arce does not claim that he suffered any of those types of harm. The only case that Arce claims was affected by Defendants' practices was *Arce v. Ward.* Ex. 140A. However, he does not indicate how denial of law library access affected the outcome of that case.

■■■ Denial of law books or other law library materials necessary to present an inmate's claim can implicate the right of access to court. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, *Bounds* "did not create an abstract, free-standing right to a law library or legal assistance." *Lewis,* 518 U.S. at 350, 116 S.Ct. 2174. *Bounds* held that prison law libraries are one acceptable method of assuring access to court, but that there are "alternate means to achieve that goal," including the provision of legal assistance by attorneys, paralegals or inmate law clerks. 430 U.S. at 830, 97 S.Ct. 1491.

■■■ Arce was represented by counsel in *Arce v. Ward.* As discussed above, when a court provides a prisoner with adequate legal assistance, "the right of access to courts is satisfied." *Lamp,* 122 F.3d at 1105 (citing *Schrier 60 F.3d at 1313* ). Arce does not argue that his attorney's performance was impaired because Arce was denied access to the law library materials. Indeed, he does not allege that the

requested materials were even relevant to *Arce v. Ward,* or to any other case that he brought.

■ Arce has failed to demonstrate that denial of law library access at Attica impaired his access to court. Arce's claim, as it relates to denial of law library materials must, therefore, be dismissed.

### III. Retaliation

■ Arce claims that defendants retaliated against him because he initiated and pursued litigation against Attica and its staff. "An act in retaliation for the exercise of a constitutional right is actionable under section 1983 even if the act when taken for different reasons would have been proper." *Franco v. Kelly,* 854 F.2d 584, 588 (2d Cir.1988) (internal quotation omitted). Thus, even though Defendants' alleged actions cannot be construed as a violation of Arce's right of access to court, since they did not impair his access, they could still be actionable, if they were retaliatory.

However, to defeat Defendants' motion for summary judgment Arce "must do more than make broad factual allegations and invoke the appropriate statute." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995). (internal citations omitted). Arce's

> claim will not survive summary judgment ... if he does not meet the burden of demonstrating two genuine issues of material fact: (1) that [his] conduct was constitutionally protected, and (2) that [defendants' acts were] motivated, in whole or in part, by his conduct—in other words, that the prison officials' actions were substantially improper retaliation.

*Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) (citing *Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

The Second Circuit has cautioned courts to "examine prisoners' claims of retaliation with skepticism and particular care." *Colon,* 58 F.3d at 872. Given "the ease with which claims of retaliation may be fabricated," *Id.,* and the likelihood that prisoners will object to decisions and acts of prison staff, such claims are "'prone to abuse.'" *Graham,* 89 F.3d at 79 (2d Cir.1996) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

■ There is no evidence to support Arce's bald conclusion that the actions at Attica were retaliatory. Arce does not allege that anyone made any statements to him or that he overhead any comments or observed any acts that suggested an improper motive. Nor does he allege that any of the defendants in *Arce v. Ward* had anything to do with depriving him of, or tampering with, his legal papers. In fact, there is no indication that any of those defendants were assigned to the IPC Unit or had access to Arce's property or that any of the staff working on the IPC Unit had any dealings with the defendants in *Arce v. Ward.* In fact, none of the defendants listed on the docket sheet for *Arce v. Ward,* Ex. 140B, are named as defendants in the present complaint.

Depositions of the defendants failed to suggest any animus or improper motivation. Sergeant LeBaron, a supervisory officer in IPC, acknowledged that he knew Arce from his prior stint at Attica, but said that they had a "good relationship" and that Arce was not a disciplinary problem or a chronic complainer. LeBaron also stated that he was not aware of any other officers who had a negative opinion of Arce. Ex. 148F, pp. 25–27. Defendants' assertions that they placed Arce in IPC and denied him permission for library visits was because of his transitional status and because they could not determine whether he had enemies at Attica. There is no evidence that these actions were taken in retaliation. The only "evidence" is the temporal proximity between the lawsuit and the alleged adverse action. However, while "temporal proximity between an inmate's lawsuit and [adverse] action may serve as circumstantial evidence of retaliation," a retaliation claim will not sur-

vive summary judgment if proximity is "the sum total of [plaintiff's] proof." *Colon*, 58 F.3d at 872. Arce has not submitted any evidence showing that any of the defendants was motivated to retaliate against him. None of the present defendants were defendants in *Arce v. Ward* and there is no indication that the two groups of defendants ever colluded or even communicated with each other.

Because Arce has not come forward with evidence giving rise to a genuine issue of fact, defendants are entitled to summary judgment on his retaliation claim.

### CONCLUSION

Defendants' motion for summary judgment (Docket # 10) is hereby GRANTED, and the complaint is dismissed.

IT IS SO ORDERED.