OPINION OF THE COURT
Victor M. Ort, J.
In these habeas corpus petitions, petitioners, State-ready inmates, seek to compel respondent Commissioner of the New York State Department of Correctional Services (DOCS) to accept them into the State prison system. Petitioners Perdue, Arrington, and Itua who were all sentenced to State prison, ask to be transferred to the State system or, in the alternative, to be credited with "work release points” while they remain in local custody. Petitioners Clemente, Morales, and Arroyo, who are parole violators, request to be transferred back to their State institutions so that they will be able to obtain personal interviews with Parole Board members in order to be eligible for re-release on parole. Respondents oppose the relief sought, arguing (1) that transfer to the State system is not a form of relief which is cognizable in habeas corpus, (2) that the matter is moot because petitioners have already been transferred, and (3) that individual inmates have no standing to seek their transfer to the State prison system pursuant to CPL 430.20 (1). For the reasons which follow, the petitions for writs of habeas corpus are converted into petitions pursuant to CPLR article 78 in the nature of mandamus. Because the petitions for writs of mandamus are now moot, a declaratory judgment is granted declaring that State-ready inmates in Nassau County have standing to seek to compel respondent to accept them into the State prison system upon the expiration of 14 days after their certification of State readiness.
Petitioner Antonio Perdue was sentenced by this court to 11/3 to 4 years in State prison on April 24, 1997. He has been State ready since May 1, 1997. (See, Correction Law §§ 600-a, *606 601.)* He claims to be eligible to apply for the work release program immediately upon his receipt at a State institution. On August 14, 1997, still not having been transferred to a State institution, Mr. Perdue filed a pro se petition for a writ of habeas corpus.
Petitioner Nesean Arrington was sentenced to one to three years in State prison on July 24, 1997. He has been State ready since August 20, 1997. However, on August 13, 1997, apparently impatient with the delay in transferring him to State prison, Mr. Arrington filed a pro se petition for a writ of habeas corpus. He likewise claims to be eligible for the work release program.
Petitioner Christopher Itua was sentenced to one to three years on June 3, 1997. He has been State ready since June 11, 1997 and also claims to be eligible for the work release program. On August 15, 1997, still in local custody, Mr. Itua filed a pro se petition for a writ of habeas corpus.
Petitioners Edward Clemente, Jose Morales, and Scott Arroyo are parolees who received time assessments after being found to have violated the terms of their parole. They each received a time assessment of time served and three months. Having disposed of their local matters, they have each been ready to return to the State system since the date of their final parole revocation hearings. Petitioner Clemente’s final hearing was on April 10, 1997. Petitioner Arroyo’s final hearing was on May 6, 1997. Petitioner Morales’ final hearing was on May 22, 1997. Additionally, they have also completed their time assessments, so that they are eligible for re-release on parole. (9 NYCRR 8002.6.) However, the Board of Parole requires each petitioner to undergo a personal interview with a Parole Board member prior to re-release. (See, Executive Law § 259-i [3] [f] [x].) Thus, petitioners are prevented from obtaining re-release on parole until they are transferred back to a State institution to have their interviews with a Parole Board member. Petitioner Edward Clemente, while still in local custody, filed a pro se petition for a writ of habeas corpus on August 14, 1997.
*607 The original pro se petitions named only the Warden of the Nassau County Jail as a respondent. Finding that the Commissioner of the State Department of Correctional Services was a necessary party to the action, the court requested the Attorney-General’s Office to accept service of the petitions. Chris Hoefenkrieg, of the Attorney-General’s Office, accepted service on behalf of DOCS on August 18, 1997. However, in their return to the writ and in their subsequent memorandum of law, the Attorney-General’s Office correctly argued that pursuant to CPLR 307 (2) service upon the Attorney-General is insufficient to confer jurisdiction upon the Commissioner of the New York State Department of Correctional Services. (See, Hanley v New York State Executive Dept., 182 AD2d 317 [3d Dept 1992].) Accordingly, by order dated October 14, 1997, the court directed service upon the Commissioner pursuant to CPLR 1001, and ordered that service was to be effective nunc pro tunc to August 18, 1997, the date service was accepted by the Attorney-General. Petitioners’ counsel effected service by certified mail on October 17, 1997. Thus, DOCS’ claim that personal jurisdiction was not obtained can no longer be maintained.
After the pro se petitions for writs of habeas corpus were filed, the court assigned the Nassau County Legal Aid Society to represent all of the petitioners. Counsel for petitioners then filed supplemental petitions, restating the claims of the original petitioners and adding petitioners Jose Morales and Scott Arroyo.
Petitioners Perdue, Arrington, Itua, and Clemente were transferred to the State prison system on September 3, 1997. Petitioner Arroyo was transferred to the State system on September 8, 1997. Petitioner Morales was released when his parole warrant was withdrawn on September 8, 1997. In view of the common questions of law involved in these petitions, the court consolidated them for purposes of briefing and argument. (CPLR 602.)
As a threshold matter, the court must initially determine whether it is divested of jurisdiction by virtue of respondent’s having rendered each of these cases moot by accepting the petitioners into the State system. Manifestly, a court’s power to declare the law is limited to determining actual controversies in pending cases. However, there is a recognized exception to this general doctrine which permits a court to preserve particular issues which are recurring, substantial and novel, and typically evade review. (Matter of David C., 69 NY2d 796 [1987].) Six petitions seeking relief for State-ready inmates *608 were submitted, to the court within the very brief period during which it was hearing writs. And, the court is aware of many other similar applications which have been brought in Nassau County. Thus, it is clear that the question of whether and when individual inmates may seek transfer to the State system under CPL 430.20 is a recurring one.
Additionally, the question of when an individual inmate may seek his transfer to the State system is a novel one. In County of Nassau v Cuomo (69 NY2d 737 [1987]), Supreme Court and the Appellate Division had directed the State Department of Correctional Services to accept all State-ready prisoners within 14 days of their sentencing, as opposed to from the date of State readiness. Although Correction Law §§ 600-a and 601 appear to require that the time be measured from the date of State readiness and both the State and County urged the Court to so hold, the Court of Appeals was unable to consider that precise issue because it was raised for the first time on appeal. (Supra, at 741.) Delay by the State in accepting State-ready inmates in effect shifts the cost of housing State prisoners from the State to the localities. (See, Matter of Ayers v Coughlin, 72 NY2d 346, 354 [1988]). In view of this significant fiscal impact on Nassau County, the court finds that the question is a substantial one. Moreover, this court is aware of no case dealing with the question of when, if ever, individual inmates in Nassau County have standing to seek to compel their transfer. Thus, the question is a novel one as well.
Finally, the court notes that in the ordinary course of events, the Commissioner, as in the six matters before the court, renders the proceedings moot by accepting the petitioning inmates into the State system, albeit after delays of two months or more. Thus, the question typically evades review. In these circumstances, the court finds that under the doctrine of recurring mootness it has jurisdiction to decide when individual prisoners have standing to seek their transfer to the State system under CPL 430.20.
Respondent next argues that because petitioners have brought petitions for habeas corpus relief when they are not entitled to immediate release from custody the petitions must be dismissed. However, CPLR 103 (c) provides, "If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.” Thus, the court converts these habeas corpus petitions into petitions pursuant to CPLR *609 article 78 in the nature of mandamus to compel respondent to accept the petitioners into the State prison system. (People ex rel. Brown v New York State Div. of Parole, 70 NY2d 391 [1987].)
Petitioners’ claims are predicated upon CPL 430.20 (1) which provides, "When a sentence of imprisonment is pronounced * * * the defendant must forthwith be committed to the custody of the appropriate public servant and detained until the sentence is complied with.” (Emphasis supplied.) The Court of Appeals held in Ayers (supra) that County Sheriffs have standing under CPL 430.20 to compel the State to accept State-ready inmates into the State system within a number of days after their certification of State readiness. This court holds that individual inmates likewise have standing to enforce the statutory mandate. In order to have "standing”, that is to be a proper party to seek judicial review, plaintiff must allege an "injury in fact”, i.e., an actual legal stake in the matter being adjudicated. To have standing, a party must show that the in-fact injury of which it complains (its aggrievement, or the adverse effect upon it) falls within the "zone of interests”, or concerns sought to be promoted or protected by the statutory provision under which the agency has acted. (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991].) In Crespo v Hall (56 NY2d 856 [1982]), the Court of Appeals held that juvenile offenders may seek to compel their transfer to the Division for Youth (DFY) in order to obtain the educational, vocational, and health services which DFY is obligated to provide. (See, Executive Law former § 515-b, renum as § 508.) Sentenced adult prisoners have a similar interest in entering the State prison system to obtain the significantly greater rehabilitation programs which are available there. This interest of State-ready inmates in seeking access to rehabilitation programs, including work release as sought by the petitioners herein, is within the "zone of interests” sought to be promoted by the statutory provision with which the agency has not complied. (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 773 [1991].) Also, the interest of parole violators in returning to the State system in order to obtain personal Board interviews and effectuate their re-release is within the "zone of interests” protected by the statute. (See, Matter of Ayers v Coughlin, 72 NY2d 346, 355 [1988], supra, where the Court stated, "Those statutory procedures [provided by the Executive Law] were plainly designed for the protection of the parolees, and are enforceable by them”.) Parallel reasoning dictates that *610 inmates sentenced to State prison, who have an interest in seeking admission to SHOCK, work release, educational and rehabilitation programs or release on parole, are within the "zone of interests” protected by CPL 430.20. Thus, State-ready prisoners have standing to compel their transfer under CPL 430.20.
It remains for the court to determine how many days after State readiness the remedy of mandamus should be available. In Ayers v Coughlin (supra), the Court of Appeals held that the statutory term "forthwith” signals immediacy and means that transfer is. to be effected at once, promptly, and without delay. (72 NY2d, at 353.) The Court declined to specify a hard-and-fast number of days after State readiness within which the transfer was to take place. In Ayers, the Court ruled that the 10-day period which Supreme Court had provided made ample allowance for the "logistic needs” of the Department to plan for the receipt of new inmates. (Supra, at 354.) While the Court recognized that there is some limited flexibility, depending upon a showing of exigent circumstances in particular cases, this is not to be based upon an evaluation of relative overcrowding between State and local detention facilities. In County of Nassau v Cuomo (121 AD2d 428 [2d Dept 1986], mod 69 NY2d 737 [1987]) the Appellate Division upheld a time period of 14 days after sentencing. In view of Correction Law §§ 600-a and 601, which require that vital information be certified to the Superintendent of the State institution before an inmate is "State-ready”, this court will allow a grace period measured from the certification of State readiness. Accordingly, this court declares that absent exigent circumstance inmates may petition for writs of mandamus compelling their transfer to State prison 14 days after their certification of State readiness.

 Correction Law § 601 provides that whenever an inmate shall be delivered to the Superintendent of a State correctional facility, the officer so delivering such inmate shall deliver to the Superintendent a certified copy of the inmate’s sentence, the probation report, fingerprint records, medical records, psychiatric records, and reports relating to assaults or other violent acts, and attempts at suicide or escape. Section 600-a requires that the Sheriff shall deliver a certified transcript of the record of the inmate’s jail time to the Superintendent.