*914 OPINION OF THE COURT
Dan Lamont, J.
Petitioner Tennyison Young, a "State-ready” inmate confined at the Albany County Penitentiary, on October 8, 1998 filed a petition for a writ of habeas corpus seeking his transfer to the State prison system forthwith pursuant to CPL 430.20 (1).
This court initially determined that the petitioner was not illegally detained — having been sentenced on August 21, 1998, as a second felony offender to an indeterminate sentence of imprisonment of 2V2 to 5 years upon his conviction of robbery in the third degree; however, this court upon its own motion converted the petition into a CPLR article 78 proceeding in the nature of mandamus to compel the Commissioner of the State Department of Correctional Services to accept him into the State prison system forthwith (see, e.g., People ex rel. Perdue v Jablonsky, 174 Misc 2d 604 [Sup Ct, Nassau County 1997]).
Background
Petitioner’s claim is predicated upon CPL 430.20 (1) which provides: “When a sentence of imprisonment is pronounced * * * the defendant must forthwith be committed to the custody of the appropriate public servant and detained until the sentence is complied with.” (Emphasis supplied.)
The Court of Appeals has held that County Sheriffs have standing under CPL 430.20 to compel the State to accept State-ready inmates into the State system within a number of days after their certification of State-readiness (Matter of Ayers v Coughlin, 72 NY2d 346 [1988]; see also, Matter of Jackson v New York State Dept. of Correctional Servs., 173 AD2d 467 [2d Dept 1991]).
In People ex rel. Perdue v Jablonsky (supra, at 610), Supreme Court, Nassau County (Ort, J.), held that individual State-ready inmates confined in the Nassau County Jail also have standing to enforce the statutory mandate — reasoning that “inmates sentenced to State prison, who have an interest in seeking admission to shock, work release, educational and rehabilitation programs or release on parole, are within the ‘zone of interests’ protected by CPL 430.20.”
For the reasons which follow, this court declines to follow the reasoning of People ex rel. Perdue v Jablonsky (supra).
Correction Law § 95
The Sentencing Reform Act of 1995 (L 1995, ch 3) included the enactment of Correction Law § 95, “Use of local govern *915 ment institutions for confinement of persons under custody with or awaiting transfer to the department”, which provides in applicable part as follows:
“1. Notwithstanding any other provision of law, the commissioner is hereby authorized to contract with any county * * * for the use of a local correctional facility to provide for the care and custody of any person convicted of an offense * * * and sentenced to an indeterminate sentence of imprisonment who is awaiting transfer to or has been transferred to the custody of the department as required by section 430.20 of the criminal procedure law * * *
“2. Any such inmate shall be deemed to be in the custody of and subject to the jurisdiction of the department but shall, during the period of his or her local confinement, be under the care of the head of the local correctional facility in which he or she resides.” (Emphasis supplied.)
Discussion
The Sentencing Reform Act of 1995 — by providing for enhanced minimum sentences for violent felony offenders, and by providing for determinate sentences of imprisonment for second felony offenders whose second crime is a violent felony offense — clearly imposed extensive further burdens upon an already overburdened and overcrowded State prison system. In Matter of Law Enforcement Officers Union v State of New York (229 AD2d 286 [3d Dept 1997]), Justice Carpinello wrote that the New York State Department of Correctional Services is in the midst of a prison crisis operating at nearly 132% of capacity as of July 1995 (supra, at 293 [concurring in part and dissenting in part]). State correctional facilities are filled beyond capacity with no end in sight. Executive orders and recently enacted laws prohibit the early release of all violent felons.
Correction Law § 95 expressly permits the Department of Correctional Services to utilize available bed space in local jails to house State-sentenced inmates, thereby providing relief from overcrowding in State prison facilities while also providing additional revenue to localities. By enacting Correction Law § 95 in 1995, the Legislature implicitly overruled — or at least established an alternative to — the mandate of Ayers (supra), provided that the Sheriff of a particular county or locality contracts and agrees with the Commissioner of the New York State Department of Correctional Services to house State inmates. Furthermore, the Legislature in Correction Law § 95 (5) has explicitly provided that State inmates may remain in a *916 local correctional facility for up to six months pursuant to such a contract or agreement. Correction Law § 95 is purely voluntary as to County Sheriffs and local correctional facilities; provides that if the head of the local correctional facility is of the opinion that continued care of a State inmate is inconsistent with the welfare or safety of the inmate, the community, the facility or other inmates, he may demand that such inmate be transferred forthwith to the custody of the department in the manner prescribed by CPL 430.20 (Correction Law § 95 [3]); and provides for reimbursement by the Commissioner to the contracting county of the actual cost of housing such inmates up to $100 per day (Correction Law § 95 [4]).
To have standing, petitioner inmate must show that the in-fact injury or harm of which he complains falls within the “zone of interests” which the pertinent statute aims to protect or promote (see, Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991]; see also, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]; Matter of New York State Nurses Assn. v Axelrod, 152 AD2d 888, 890 [3d Dept 1989]).
This court holds and determines that individual “State-ready” inmates have no standing under CPL 430.20 (1) to compel respondents to transfer them to State Department of Correctional Services facilities forthwith because the Legislature in addressing pervasive prison overcrowding has in Correction Law § 95 explicitly provided for contracts between the Commissioner and localities to house such inmates for up to six months. Although being housed in a local correctional facility may arguably have a harmful eifect on “State-ready” inmates by preventing them from having access to shock, work release, educational and rehabilitation programs, or release on parole, this court holds and determines that by enacting Correction Law § 95 the Legislature clearly expressed its intent that inmates sentenced to State prison are not within the “zone of interests” which CPL 430.20 aims to promote or protect.
Conclusion
This court holds and determines that petitioner has no standing under CPL 430.20 to compel respondent Commissioner to forthwith transfer him to a State prison facility when the Commissioner pursuant to Correction Law § 95 has entered into a contract with Albany County for the use of the local correctional facility to house such inmate. Since the respondent Commissioner has clearly demonstrated such an agreement *917 with Albany County — which contract expressly includes the petitioner herein — this court holds and determines that the petition should be and the same is hereby dismissed.