OPINION OF THE COURT
Richard Lee Price, J.
This decision will address 54 consolidated petitions by newly sentenced prisoners confined at Rikers Island, a New York City Department of Correction (City DOC) facility, while awaiting transfer to a State correctional facility (State DOCS). The inmates were sentenced to a period of incarceration in a State DOCS facility but, pursuant to a contract between it and City DOC, they are being housed at Rikers Island for up to six months. Petitioners seek to be transferred forthwith to a State DOCS prison because, they claim, while in the City DOC facility they are denied certain benefits afforded to prisoners incarcerated in State DOCS facilities. Local facilities, such as Rikers Island, simply don’t offer certain benefits including, and most significantly, early release programs.
Opposing the petitions are both the City DOC and State DOCS who cite severe overcrowding in State correctional facilities as the primary justification for allowing these inmates to remain, for up to six months, in Rikers Island.
While this decision will tackle the apparent clash between these prisoners’ deprivations and a seemingly irremediable prison overcrowding problem, the issues are actually narrower when closely analyzed. The inmates have a legitimate grievance capable of redress without flooding an overpopulated State prison system. The resolution lies with an adjustment of the criteria respondents should establish and follow to determine who may be locally incarcerated, pursuant to the contract, for up to six months and who, on the other hand, must be transferred to a State DOCS facility within 10 days of being classified as “State ready.”
To understand the resolution, however, the history and procedural background of the problem must be fully explored.
*709 Statistics bear out the State DOCS claim that its prison system is overcrowded and overburdened. Budgetary restrictions have contributed to the problem. Using local facilities to temporarily accommodate the need for additional prisons is reasonable and justifiable. As such, section 59 of the Sentencing Reform Act of 1995 (L 1995, ch 3) permitted State DOCS to contract with a local DOC to house certain prisoners awaiting transfer to State facilities. The first statute, however, only allowed the local DOC to be compensated up to a maximum of $40 per day per prisoner which was an insufficient financial incentive to encourage local facilities to participate.
In 1997 (L 1997, ch 435, § 46), therefore, Correction Law § 95 was enacted to permit the same contractual scheme for an increased fee of up to $100 per day per inmate. On September 28, 1999 (L 1999, ch 518, § 1), the Legislature amended section 95 to expand the category of inmates eligible to become a “contract inmate” to those sentenced to either determinate or indeterminate sentences; the previous version was limited to those sentenced to an indeterminate term only.
It is thus clear that the Legislature, State DOCS and City DOC are committed to this program. That there has been a progressive increase in the amount of compensation, and an expansion of the class of inmates who may become a contract inmate, reflect the fact that the program must change as necessary in order to be effective. The recent expansion of the class of inmates who may be locally confined further reveals the Legislature’s awareness that expanding, rather than limiting, the criteria for determining who may be a contract inmate is essential or else the entire program will be jeopardized.
Respondents oppose the petitions both technically and substantively. It is a disingenuous argument and thus rejected that habeas corpus relief cannot be granted because none of the petitioners are entitled to immediate release from custody. These prisoners are not seeking release from prison but, rather, transfer to a State facility. As such, the petitions are in the nature of mandamus to compel respondent City DOC to transfer, and State DOCS to accept, them into a State prison immediately. The petitions are, therefore, converted to CPLR article 78 proceedings which overcome that technical objection. (See, People ex rel. Perdue v Jablonsky, 174 Misc 2d 604 [Sup Ct, Nassau County 1997].)
Further, Matter of Young v Goord (178 Misc 2d 913 [Sup Ct, Albany County 1998]) notwithstanding, contract inmates are in the “zone of interest” under CPL 430.20 and thus have *710 standing to bring such a proceeding. (See, People ex rel. Perdue v Jablonsky, supra; Matter of Dental Socy. v Carey, 61 NY2d 330, 334 [1984] [which holds that one is in the “zone of interest” if s/he is “to be protected by the legislation and * * * suffer(s) injury from administrative action or inaction”].)
Petitioners assert that a 1992 consent decree in Matter of Calvin v Abate (index No. 44831/98) precludes State DOCS and City DOC from entering into the contract in question. The consent decree was issued before Correction Law § 95 was enacted. It incorporated a State DOCS agreement to accept for transfer all inmates classified as “State ready” within 10 days. Similar decrees were entered throughout the State. Over the ensuing months and years, however, State DOCS was fined millions of dollars for violating the various decrees. Essentially, it was the local facilities who pursued those violations because it was a financial hardship to continue to incarcerate contract inmates beyond 10 days. Since then the amount of compensation was substantially increased and it appears that at least City DOC is no longer pressing for such speedy transfers. The current contract reflects that City DOC is amenable to housing these inmates for up to six months at the agreed-upon rate.
Petitioners argue that the Calvin consent decree is still controlling requiring that all contract prisoners be transferred to a State facility within 10 days of being classified “State ready.” Petitioners further assert that the only way to extend the permissible period of local incarceration beyond 10 days is a motion to modify the consent decree. With that position this court disagrees. Correction Law § 95 was enacted after the consent decree and it specifically contemplates and permits the type of contract in question. Thus, it is not that the provisions of the consent decree have become inadequate or inconvenient but, rather, that subsequent legislative action has changed the situation.
We then turn to the central issue, which is whether or not those benefits the contract inmates are deprived of while in a City DOC facility implicate their constitutional rights.
Three significant United States Supreme Court decisions are instructive and bear discussion on the issue of whether the scheme contemplated by Correction Law § 95 and the contract in question violates the Due Process Clause. Wolff v McDonnell (418 US 539, 555 [1974]) articulated the principle that “[a] prisoner is not wholly stripped of constitutional protections.” In Wolff, prisoners were found to have a constitutionally protected liberty interest in a shortened prison sentence which resulted from earned good time credits.
*711 Following Wolff (supra) was Meacham v Fano (427 US 215 [1976]), which declined to find a due process protected liberty interest in a prisoner’s transfer from one State prison to another even though the second facility had more burdensome conditions of confinement. That decision specifically exempted “[t]he initial decision to assign the convict to a particular institution” from “audit under the Due Process Clause” even when “the degree of confinement in one prison may be quite different from that in another.” (Meacham v Fano, supra, 427 US, at 224.)
Then came Sandin v Conner (515 US 472 [1995]), which reaffirmed the “due process principles * * * established and applied in Wolff and Meacham.” (515 US, at 483.) Sandin, upon which respondents rely, dealt with disciplinary confinement. While not finding a liberty interest in such disciplinary confinement, the decision specifically noted that such confinement did not “affect the duration of [the prisoner’s] sentence.” (515 US, at 487.) It is clear from Sandin, Meacham (supra) and Wolff (supra) that if the State action complained of deprives the inmate of the opportunity to shorten her/his period of incarceration the Due Process Clause is indeed implicated.
While these contract prisoners may establish valid Due Process Clause violations, they do not have a similarly valid Equal Protection Clause argument because they are not a suspect class (Lee v Governor of N. Y., 87 F3d 55 [2d Cir 1996]; Correction Law § 95) and the contracts in question are “rationally related to a legitimate state interest.” (Lee v Governor of N. Y., supra, 87 F3d, at 60.)
The constitutional question these petitions raise, therefore, is whether the contract violates the contract prisoners’ right to due process. To the extent that neither the statute nor the contract establish criteria respondents must follow to ensure that contract inmates are not deprived of the opportunity to shorten their term of confinement, the Due Process Clause is potentially violated. It is impossible, however, based on the scant facts in the individual petitions to determine whether any or all of the petitioners have, by virtue of their confinement at Rikers Island, actually been deprived of their due process right to participate in programs that would earn them credit to shorten the length of their incarceration.
Many of the petitions do not recite the term of the original sentence and none contain the length of time each petitioner will be held at Rikers Island. Although they, by the terms of contract, can be held there for up to six months, it is not at all *712 clear that they will all remain at Rikers Island for the maximum amount of time. Petitioners cite the following “possible deprivations:”
1. Prisoners who were incarcerated before they were sentenced and who may be eligible for parole during the six-month contract period may not have the opportunity to see the Parole Board in a timely manner.
2. Inmates with short sentences will not be able to enroll in programs that permit them to qualify for “merit time” sentence reductions.
3. Inmates who are or soon will be eligible for work or temporary release programs do not have the ability to enroll in those programs while incarcerated at Rikers Island.
Of these deprivations only the first two constitute due process violations as they directly affect the duration of incarceration. It is well established that there is no constitutionally protected liberty interest in initial placement in either work or temporary release programs, as opposed to continued participation in such programs. (Asquith v Volunteers of Am., 1 F Supp 2d 405 [D NJ 1998]; Greaves v State of New York, 951 F Supp 33 [SD NY 1996]; Matter of Anderson v Williams, 173 Misc 2d 65 [Sup Ct, NY County 1997].) Since these contract inmates are all newly sentenced and, as such, have not been enrolled in temporary or work release programs, that deprivation is not of constitutional proportion.
In order to pass constitutional muster respondents must create and follow criteria that ensures that the contract inmates’ ability to shorten the duration of their sentence is not interfered with. They must either exempt those inmates from the contract altogether or transfer them to a State facility within 10 days of their classification as “State ready.” That would include all inmates eligible for parole within six months (unless they are guaranteed timely Parole Board review) and those with short sentences (or those eligible for entry into the shock incarceration program) who lose the opportunity to shorten their sentence because they cannot enroll in merit time programs during the first six months of their confinement. If such criteria were mandatory the statutory scheme of Correction Law § 95 and the contract at issue would survive constitutional attack. Until then, however, those inmates denied timely Parole Board reviews or those with short sentences denied the right to earn merit time sentence reductions or enroll in the shock incarceration program must be immediately transferred to a State facility. Upon presentation of *713 proof to this court that any or all of the petitioners are in either category, their application for immediate transfer will be granted. It is only the lack of this specific information in the petitions presented that prevents this court from granting the relief requested.
It is inappropriate to rely on the prisoner and the Legal Aid Society to identify those inmates who should be exempt from the contract. That burden clearly rests on and must be carried out by City DOC and State DOCS. The Legal Aid Society does not exist to perform those functions the government is obligated to do. The already strained resources of the Legal Aid Society are wasted doing this purely governmental function.
In the meantime, respondents are advised that, at least in this court’s opinion, the failure to expressly exempt from the contract these two groups of inmates jeopardizes continuation of the contract program. Since the program is badly needed, respondents should, forthwith, amend the contract to exclude prisoners eligible for parole within six months of their confinement at the local facility or guarantee them timely Parole Board reviews, and they must exclude from the contract all merit time eligible inmates with such short sentences that their ability to shorten the duration of their confinement by participating in qualifying programs during the first six months is interfered with by their local confinement as contract inmates. Respondents should also explore the feasibility of changing the program to include as contract prisoners those inmates with set release dates. If inmates with set release dates could be transferred pending their release from custody to a City DOC facility, that would obviate the harm that is potentially caused by limiting the contract inmate class to those newly sentenced. Such a change, however, would require legislative amendments to Correction Law § 95.
Failure to do so will not only prompt further litigation but may, upon the appropriate application, cause the contract and the statute upon which it is based to fall.
Counsel for petitioners may present proof to this court identifying each and every petitioner who belongs to either of the above two categories and respondents’ counsel may present any opposing proof on February 14, 2000 at 10:30 a.m. in Part 47, courtroom 621. Counsel for the respective parties are encouraged to discuss each case in advance to ensure that the proper procedures are in place to effectuate transfer of each inmate found to be in either category, immediately.
Counsel for respondents must on that day present to this court their plan for future compliance with its constitutional *714 requirements as outlined above. The plan must establish the method respondents will use to identify those inmates eligible for parole within six months and exempt them from the contract unless they are guaranteed timely Parole Board reviews. The plan must identify inmates eligible for immediate entry into the shock incarceration program and exempt them from the contract. Finally, the plan must contain a formula to identify inmates with such short sentences that denial of their ability to enter merit time programs within the first six months will prevent them from shortening the duration of their confinement.